**K&L GATES LLP**
Ronie Schmelz (State Bar No. 130798)
ronie.schmelz@klgates.com
(310) 552-5002
Kevin Asfour (State Bar No. 228993)
kevin.asfour@klgates.com
(310) 552-5016
Kevin Sullivan (State Bar No. 341596)
kevin.sullivan@klgates.com
(310) 552-5072
10100 Santa Monica Blvd.
Floor 8
Los Angeles, CA 90067

Attorneys for Defendant
KISSLER AND CO. INC.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| SHLA GROUP INC., PARK 2580, INC., | Case No. 2:23-cv-07567-TJH-BFM |
| Plaintiffs, | [Hon. Judge Terry J. Hatter, Jr.] |
| v. | **DEFENDANT KISSLER AND CO. INC'S NOTICE OF MOTION AND MOTION TO DISMISS VARIOUS CAUSES OF ACTION IN PLAINTIFFS' COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES** |
| KISSLER AND CO. INC. | |
| Defendant. | |
| | *[Filed concurrently with (1) Declaration of Jeffrey Kissler; (2) Request for Judicial Notice; and (3) [Proposed] Order]* |
| | Date:           March 4, 2024 |
| | Time:          UNDER SUBMISSION |
| | Courtroom:  9C |

MOTION TO DISMISS

507357241.4

### NOTICE OF MOTION

TO THE COURT, ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE, that on March 4, 2024, or as soon thereafter as the matter may be heard in Courtroom 9C of the above-captioned Court, located at 350 W. 1st Street, Los Angeles, California, 90012, Defendant Kissler and Co. Inc. will and hereby does move the Court to dismiss the second (breach of written contract), third (breach of implied contract), and fourth (promissory estoppel) causes of action in Plaintiffs' Complaint, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, on the ground that Plaintiffs have failed to state a claim upon which relief can be granted as to the aforementioned claims.

PLEASE TAKE FURTHER NOTICE that, as set forth in Hon. Terry J. Hatter Jr.'s local procedures, "**no appearance [is] necessary**" in connection with this motion, as "Judge Hatter takes all CIVIL motions under submission as of the calendared date of the motion (see Local Rule 83-9.2)."

This motion is made following conferences of counsel pursuant to L.R. 7-3 beginning on January 8, 2024.

The motion is based upon this Notice; the Memorandum of Points and Authorities attached hereto; the Declaration of Jeffrey Kissler filed concurrently herewith and all exhibits thereto; the Request for Judicial Notice filed concurrently herewith; all pleadings, papers and records on file with the Court in this action; and all other such argument and evidence as may be presented to the Court in connection with the motion.

Dated:  January 16, 2024               K&L GATES LLP

By /s/ *Kevin G. Sullivan*
Ronie M. Schmelz
Kevin S. Asfour
Kevin G. Sullivan

# **TABLE OF CONTENTS**

I.  INTRODUCTION ...................................................................................... 1

II.  LEGAL STANDARD ............................................................................... 4

III.  RELEVANT FACTUAL BACKGROUND ............................................ 5

IV.  THE COURT SHOULD DISMISS PLAINTIFFS' CONTRACT AND
PROMISSORY ESTOPPEL CLAIMS WITH PREJUDICE ................... 9

    A.  PLAINTIFFS FAIL TO STATE A CLAIM FOR BREACH OF
WRITTEN CONTRACT ................................................................. 9

    B.  PLAINTIFFS FAIL TO STATE A CLAIM FOR BREACH OF
IMPLIED CONTRACT ................................................................. 12

    C.  PLAINTIFFS FAIL TO STATE A CLAIM FOR PROMISSORY
ESTOPPEL .................................................................................. 15

        i.  The Doctrine Of Promissory Estoppel is Inapplicable Where
Commercial Entities Bargain for Consideration ..................... 16

        ii.  Plaintiffs Fail to State a Claim for Promissory Estoppel In Any
Event ......................................................................................... 17

V.  CONCLUSION ....................................................................................... 20

1

# TABLE OF AUTHORITIES

2

**Page(s)**

3

**Cases**

4

5  *Abrego Abrego v. Dow Chem. Co.*,
6     443 F.3d 676 (9th Cir. 2006) .................................................................. 5

6

7  *Aceves v. U.S. Bank, N.A.*,
   192 Cal. App. 4th 218 (2011) ..................................................... 18, 20

8

9  *Allen v. Nextera Energy Operating Servs., LLC*,
   No. C 12-01610 LB, 2012 WL 1918930 (N.D. Cal. May 25, 2012) ............... 13

10

11  *Ashcroft v. Iqbal*,
   556 U.S. 662 (2009)............................................................................ 4, 15

12

13  *Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007)............................................................................. 15

14

15  *Buchanan v. Neighbors Van Lines*,
   No. CV 10 6206 PSG, 2010 WL 4916644 (C.D. Cal. Nov. 29, 2010) ............. 12

16

17  *Carlson, Collins, Gordon & Bold v. Banducci*,
   257 Cal. App. 2d 212 (1967) ................................................................ 11

18

19  *Chavez v. CITI mortgages, Inc.*,
   No. 5:12-CV-1617-SVW-OP, 2012 WL 12895843 (C.D. Cal. Dec. 19,
   2012)............................................................................................... 17

20

21  *Coto Settlement v. Eisenberg*,
   593 F.3d 1031 (9th Cir. 2010) ............................................................... 5

22

23  *Div. of Lab. L. Enf't v. Transpacific Transportation Co.*,
   69 Cal. App. 3d 268 (1977) ............................................................ 13, 18

24  *Forgeron Inc. v. Hansen*,
   149 Cal. App. 2d 352, 308 P.2d 406 (1957)........................................... 16

25

26  *Garcia v. World Savings, FSB*,
   183 Cal. App. 4th 1031 (2010) ....................................................... 18, 19

27  *Healy v. Brewster*,
28     59 Cal. 2d 455 (1963) ......................................................................... 16

*Horne v. Harley-Davidson, Inc.*,
  660 F. Supp. 2d 1152 (C.D. Cal. 2009) ...............................................17

*Knievel v. ESPN*,
  393 F.3d 1068 (9th Cir. 2005) ...............................................................5

*Krottner v. Starbucks Corp.*,
  406 Fed. Appx. 129 (9th Cir. 2010) ..............................................9, 13

*Ladas v. California State Automobile Assn.*,
  19 Cal. App. 4th 761 (1993) ...........................................................9, 13

*Landberg v. Landberg*,
  24 Cal. App. 3d 742 (1972) ..................................................................10

*Landers v. Quality Commc'ns, Inc.*,
  771 F.3d 638 (9th Cir. 2014) .................................................................4

*Marvin v. Marvin*,
  18 Cal.3d 660 (1976) ...........................................................................12

*Mend Health, Inc. v. Carbon Health Techs., Inc.*,
  588 F. Supp. 3d 1049 (C.D. Cal. 2022) ...............................................15

*Monster Energy Co. v. Schechter*,
  7 Cal. 5th 781 (2019) ......................................................................9, 13

*Panagotacos v. Bank of America*,
  60 Cal. App. 4th 851 (1998) ................................................................10

*Parrino v. FHP, Inc.*,
  146 F.3d 699 (9th Cir. 1998) .................................................................5

*Parrish v. NFL Players Ass'n*,
  534 F. Supp. 2d 1081 (N.D. Cal. 2007) ...............................................12

*Poway Royal Mobilehome Owners Ass'n v. City of Poway*,
  149 Cal. App. 4th 1460 (2007) ............................................................16

*Russell v. Union Oil Co.*,
  7 Cal. App. 3d 110 (1970) ...............................................................9, 13

*Sprewell v. Golden State Warriors*,
  266 F.3d 979 (9th Cir. 2001) .............................................................4, 5

iv

*Tom Trading, Inc. v. Better Blue, Inc.*,
    26 Fed. Appx. 733 (9th Cir. 2002) ........................................................9

*United States v. Ritchie*,
    342 F.3d 903 (9th Cir. 2003) ..............................................................5

*Vella v. Hudgin*,
    151 Cal. App. 3d 515 (1984) ..............................................................11

*Walker v. KFC Corp.*,
    728 F.2d 1215 (9th Cir. 1984) ............................................................17

*Weinstein v. Meritor, Inc.*,
    No. 2:16-CV-01076, 2017 WL 4397947 (D. Nev. Sept. 29, 2017) ...................20

*Youngman v. Nevada Irr. Dist.*,
    70 Cal. 2d 240 (1969) ...............................................................16, 17

*Zenith Ins. Co. v. O'Connor*,
    148 Cal. App. 4th 998 (2007) .............................................................15

**Statutes**

Cal. Civ. Code § 1620 ...........................................................................12

Cal. Civ. Code § 1621 ...........................................................................12

**Other Authorities**

Fed. R. Civ. P. 12(b)(6) ..........................................................................4

1

## MEMORANDUM OF POINTS AND AUTHORITIES

Defendant Kissler and Co. Inc ("Kissler") respectfully submits this Memorandum of Points and Authorities in support of its Motion to Dismiss the Complaint of Plaintiffs SHLA Group Inc. ("SHLA"), and Park 2580, Inc. ("Park 2580") (collectively, "Plaintiffs").

## I.   INTRODUCTION

Kissler is a family-owned plumbing repair part manufacturer and distributor located in northern New Jersey.  Plaintiffs are plumbing and home improvements manufacturers and distributors located in California, from whom Kissler purchased—and paid for—in excess of $1 million worth of products (which Plaintiffs implicitly acknowledge in their Complaint, as detailed herein) for resale to Home Depot.

Plaintiffs' Complaint asserts four causes of action.  The first, for declaratory relief, relates to an indemnity dispute between the parties regarding an underlying action for patent infringement, brought against Kissler by Danco, Inc. (not a party to this action), stemming from Kissler's purchase and resale of Plaintiffs' products. Plaintiffs' filing of the declaratory relief claim—and indeed this entire civil action—was prompted by Kissler's pre-suit correspondence with Plaintiffs regarding the indemnity dispute, wherein Kissler advised Plaintiffs that it was preparing to file suit in the U.S. District Court for the District of New Jersey if the indemnity dispute could not be resolved, and provided a draft complaint (as is evidenced by the exhibits to Plaintiffs' own Complaint).  In other words, Plaintiffs engaged in a "race to the courthouse" in an attempt to have the indemnity dispute venued in California rather than New Jersey.

Kissler is not moving to dismiss the Complaint's declaratory relief cause of action.[1]  Kissler does, however, move to dismiss the Complaint's other causes of

---

[1] Shortly after Plaintiffs filed this action, Kissler filed its case against Plaintiffs in New Jersey.  Although Kissler initially contemplated moving to dismiss Plaintiffs' entire case in this Court under the "anticipatory filing" exception to the first-filed rule, in favor of Kissler's pending action in New Jersey—and strongly believes such motion would be merited—Kissler has ultimately elected not to go that route.  Instead, to

1

action, for breach of written contract, breach of implied contract, and promissory estoppel.  Plaintiffs have not adequately pleaded any of these claims—nor can they.  At the core of Plaintiffs' claims are three purchase orders that Kissler allegedly placed with Plaintiffs on December 17, 2021, in the total alleged amount of approximately $2 million.  Plaintiffs allege that Kissler has "breached" and "repudiated" its obligations to purchase all of the goods referenced in those December 17, 2021 purchase orders.  Plaintiffs also allege that in "reliance" on those purchase orders, they made arrangements with an unnamed Chinese manufacturer to produce "all the products needed to fulfill Kissler's December 17, 2021 purchase orders."

As is demonstrated by the parties' email correspondence surrounding the December 17, 2021 purchase orders—which emails the Complaint extensively cites, relies upon, and even (selectively) quotes from, but does not attach[2]—those purchase orders did not amount to a contract, as a matter of law.  Nor did they (or could they have) induced Plaintiffs' "reliance," let alone *reasonable* reliance, for multiple distinct reasons:

- **First**, Plaintiffs immediately (the same day) responded to the December 17, 2021 purchase orders by *rejecting* them, in writing, based upon the price Kissler offered for certain products, and instead requested that Kissler adjust the price and resubmit revised orders.  As a matter of hornbook law, this counter-proposal by Plaintiffs extinguished those purchase orders.
- **Second**, Kissler immediately (still the same day), responded to Plaintiffs' request, in writing, and *declined* to resubmit the orders, explaining,

avoid the further delay that a "forum fight" would inevitably entail, Kissler intends to dismiss its action in New Jersey (without prejudice) and instead assert its various contractual and tort claims against Plaintiffs in this action, as counterclaims, concurrently with its answer.

[2] As detailed in Section II, below, the Court may thus consider the emails under the "incorporation by reference" doctrine.

"Please hold off on the POs.  HD [Home Depot] is asking for another week and are going to push back the May date.  Sorry but they just called me.  Please confirm."  Plaintiffs immediately responded and confirmed, "Got it, no problem."  This entire exchange occurred on December 17, 2021, over the course of just a few hours.

- **Third**, six days later, on December 23, 2021, Kissler submitted a *new* purchase order to Plaintiffs, stating, "Here is your opening order. ... Please let me know if this can ship by April 1st the latest."  In reply, Plaintiffs stated, "Are we going to keep the previous 3 POs or cancel?  What's the total plan for shipments?"  Kissler replied, the same day, "For now cancel the previous 3.  We won't know about those until Jan so I can always re-write.  For the PO I just sent, please ship whenever it's ready."  Plaintiffs responded later that day, "Ok, will do.  Thanks!"

The Complaint, in fact, acknowledges the December 23, 2021 purchase order, as well as two subsequent orders placed by Kissler, totaling in excess of $1 million, and does not allege that Kissler breached any of *those* purchase orders.  Rather, the Complaint seeks to hold Kissler liable for "breach" of the earlier December 17, 2021 purchase orders, allegedly totaling $2 million—despite the incontrovertible written record demonstrating that there was no contract formed by the December 17, 2021 purchase orders and, moreover, that Plaintiffs confirmed in writing their understanding that those orders had been extinguished and abandoned.

Similarly, in an attempt to plead a vaguely asserted promissory estoppel claim, Plaintiffs maintain that they undertook steps in "reliance" on the December 17, 2021 purchase orders, in January of 2022—weeks **after** (i) the orders had been extinguished by Plaintiffs' own conduct, and (ii) the parties had confirmed in writing that those orders were no longer operative.  Plaintiffs' allegations of reliance are thus facially implausible and infirm.  Additionally, the Complaint does not allege a "clear and unambiguous" promise, as would be required to support a claim of promissory

1   estoppel.  Moreover, the law is clear that the doctrine of promissory estoppel does not
2   even apply to commercial bargaining discussions, in any event.

3        Finally, Plaintiffs have asserted an ill-fated "implied contract" claim that (i) fails
4   to articulate the terms of the supposed implied contract with any meaningful
5   particularity; (ii) does not demonstrate conduct by Kissler that would have given rise to
6   any implied contract; and (iii) is based upon selective quotations and
7   misrepresentations of the parties' email correspondence.

8        In sum, Plaintiffs' contractual and promissory estoppel claims are facially
9   invalid and foreclosed by the very writings on which the Complaint relies.  It is readily
10  apparent that Plaintiffs hastily manufactured those claims in an effort to gain leverage
11  over Kissler in connection with the parties' pending indemnity dispute.  The Court
12  should thus dismiss these claims, without leave to amend.

13  **II.   LEGAL STANDARD**

14       Kissler moves to dismiss under Fed. R. Civ. P. 12(b)(6).  To withstand a Rule
15  12(b)(6) motion, "a complaint must contain sufficient factual content 'to state a claim
16  to relief that is plausible on its face.'"  *Landers v. Quality Commc'ns, Inc.*, 771 F.3d
17  638, 641 (9th Cir. 2014) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570
18  (2007)).  Plausibility requires "more than a sheer possibility that a defendant has acted
19  unlawfully."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  "Where a complaint pleads
20  facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line
21  between possibility and plausibility of 'entitlement to relief.'"  *Id.* (quoting *Twombly*,
22  550 U.S. at 557).  Thus, Plaintiffs must allege facts—not mere "labels and
23  conclusions[,]" "a formulaic recitation of the elements of a cause of action[,]" or
24  "naked assertion[s] devoid of "further factual enhancement"—that elevate his claims
25  from merely possible to plausible.  *Id.* (internal quotation marks omitted).

26       In ruling on such a motion, the district court accepts as true all allegations of
27  material fact.  *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).
28  "The court need not, however, accept as true allegations that contradict matters

properly subject to judicial notice or by exhibit. . . .  Nor is the court required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Id*.  On a motion to dismiss, [a court] may consider materials incorporated into the complaint . . . ." *Coto Settlement v. Eisenberg*, 593 F.3d 1031, 1038 (9th Cir. 2010).

Importantly for present purposes, the "incorporation by reference" doctrine allows a court to look beyond the pleadings without converting a 12(b)(6) motion into a motion for summary judgment.  *Knievel v. ESPN*, 393 F.3d 1068, 1076-1077 (9th Cir. 2005).  A court may deem a document incorporated into a complaint "if the plaintiff refers extensively to the document or the document forms the basis of the plaintiff's claim."  *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003).  Accordingly, a document may be incorporated even if it is never referenced directly in the complaint if the claim necessarily depended on the document.  *See Parrino v. FHP, Inc*., 146 F.3d 699, 706 (9th Cir. 1998), superseded by statute on other grounds as recognized in *Abrego Abrego v. Dow Chem. Co*., 443 F.3d 676, 681-82 (9th Cir. 2006).

## III.   RELEVANT FACTUAL BACKGROUND

Preliminarily, Kissler notes that Plaintiffs allege, and base their claims upon, a series of communications between themselves and Kissler, including email traffic spanning July 7, 2021 through April 13, 2022.  (*See* Compl., ¶¶ 12-15.)  Indeed, in several instances the Complaint purports to quote directly from the emails.  (*See id.*)  As such, the emails are incorporated by reference into the Complaint, and the Court may consider them in ruling on this motion, alongside the allegations in the body of the Complaint itself.[3]  *See, e.g., Knievel*, 393 F.3d at 1076-77; *Ritchie*, 342 F.3d at 908; *Parrino v. FHP, Inc*., 146 F.3d at 706.

---

[3] Kissler disputes many of the allegations in Plaintiffs' Complaint, but recognizes that a plaintiff's well-pleaded factual allegations are taken as true for the purposes of a motion to dismiss—except where contradicted by documents incorporated by reference into the Complaint or by matters of judicial notice (*see* Section II, above).  Accordingly, Kissler's recitation of the Complaint's factual allegations for the

5

Plaintiffs allege that, in February 2020, Kissler submitted bids to Home Depot for "certain contracts regarding plumbing and repair products." (Compl., ¶ 8.) Kissler then allegedly "reached out to Mr. Gang He (CEO of SHLA Group., Inc.) in early 2021 to discuss product sourcing and procurement to fulfill Home Depot's demands if Kissler's bidding was successful." (Compl., ¶¶ 10-11.)

Thereafter, on July 7, 2021, Kissler emailed Mr. He to inform him that Kissler "won some home depot business." (Compl., ¶¶ 12; *see also* Kissler Decl., Ex. A.) The parties then proceeded to exchange a series of emails from July 8, 2021 through July 15, 2021, requesting various information from one another relating to Kissler's potential purchase of products from SHLA. (*See* Compl., ¶¶ 12-13; Kissler Decl., Ex A.) In one such email dated July 8, 2021, Mr. He asked Kissler various questions, including, "In the future, how often is the shipment?" (Kissler Decl., Ex A.) Kissler responded to that question in a July 15, 2021 email, stating, "**I think** shipments will be 4 times a year, **but I don't know until we start doing business with the[m]** [*i.e.,* Home Depot]." (Kissler Decl., Ex. A (emphasis added).) In their Complaint, Plaintiffs have quoted the phrase "4 times a year" from that email, out of context, in an apparent effort to portray it (inaccurately) as some sort of "commitment." (*See* Compl., ¶ 13.)

Plaintiffs then allege that "[o]n December 17, 2021, [Kissler] issued three purchase orders to SHLA consisting of PO10999, PO10107, and PO10106" (hereafter referred to as the "December 17, 2021 Purchase Orders"). (Compl., ¶ 14.) Plaintiffs further allege that "the purchase orders specified December 2021 as estimated shipping dates," and that "[t]he three orders combined total over US $2 million worth of products." (*Id.*)

---

purposes of this motion is not an admission of their truth. Additionally, the factual allegations relating to the underlying patent infringement action by non-party Danco, Inc. relate only to Plaintiffs' declaratory relief cause of action, which Kissler is not moving to dismiss, and thus those allegations are not relevant to this motion and are not discussed herein.

Plaintiffs omit from their Complaint, however, critical details relating to the alleged December 17, 2021 Purchase Orders—details which are reflected in the very same email thread.  To begin, and contrary to the Complaint's suggestion that the purchase orders contemplated shipment in December 2021, the email transmitting the purchase orders stated, "POs 10106 and 10107 can be shipped after the 2/22 [February 2022] mark. 10106 Target would be April 1 and 10107 would be a May 15th mark." (Kissler Decl., Ex. B.).  More importantly, that same day (December 17, 2021), and within the span of **just a few hours**:

(i)   Mr. He responded to the email transmitting the purchase orders, disputing a product price reflected therein—thereby *rejecting* the purchase orders ("From one look at the POs, item 70685, Moen BN, **$11.39 not $9.36. Please re-send me those POs.**") (Kissler Decl., Ex. B (emphasis added).);

(ii)  Kissler then replied to Mr. He's email, *declining* his request to revise and resubmit the purchase orders, stating, "**Please hold off on the POs.**  HD [Home Depot] is asking for another week and are going to push back the May date.  Sorry but they just called me.  Please confirm;" and

(iii) Mr. He replied back, "**Got it, no problem.**"

(Kissler Decl., Ex. B (emphasis added).)

Then, six days later, on December 23, 2021, Kissler sent an email to Mr. He, attaching a *new* purchase order (no. 10127), and stating, "Here is your opening order. . . . Please let me know if this can ship by April 1st the latest."  (Kissler Decl., Ex. C.) Mr. He responded that same day, "Are we going to keep the previous 3 POs or cancel? What's the total plan for shipments?"  (*Id.*)  Kissler replied, the same day, "For now cancel the previous 3.  We won't know about those until Jan so I can always re-write. For the PO I just sent, please ship whenever it's ready."  (*Id.*)  Mr. He responded later that day, "Ok, will do.  Thanks!"  (*Id.*)

7

MOTION TO DISMISS

Plaintiffs' Complaint alleges that Kissler issued this new purchase order (no. 10127), and two further purchase orders (nos. 10363 and 10397), on April 13, 2022 (collectively, the "Subsequent Purchase Orders"). (Compl., ¶ 15.) To be clear, these three Subsequent Purchase Orders are alleged to be different from (and have different order numbers from) the alleged December 17, 2021 Purchase Orders. Plaintiffs allege that the Subsequent Purchase Orders "total over US $1 million worth of products" (as distinguished from the earlier alleged December 17, 2021 Purchase Orders, which are alleged to "total over US $2 million worth of products"). (*Compare* Compl. ¶ 14 *with* ¶ 15.)

The Complaint then alleges that "Mr. He formed Park 2580 in January 2022"— several weeks **after** the December 17, 2021 email exchange wherein (i) Mr. He rejected the alleged December 17, 2021 Purchase Orders, and (ii) the parties agreed in writing not to proceed with those orders.[4] (Compl., ¶ 16.) Mr. He allegedly formed plaintiff Park 2580 "for the purpose of transacting business with Kissler, and to separate them from the businesses of SHLA." (*Id.*) The Complaint further alleges that "Park 2580 has entered into contractual relationships with a Chinese manufacturer to fabricate the universal trim kit products Kissler ordered," and that "Park 2580 made arrangements for the Chinese manufacturer to make all the products needed to fulfill Kissler's **December 17, 2021 purchase orders**"—*i.e.*, the very same purchase orders that Mr. He had rejected, and the parties agreed to abandon, several weeks before Park 2580 even existed. (Compl., ¶ 17 (emphasis added).)

Finally, the Complaint alleges that "Kissler has repudiated its commitments to purchase all the goods that were fabricated **according to Kissler's December 17, 2021 purchase orders**." (Compl., ¶ 19 (emphasis added).) There is *no allegation* in the

---

[4] Indeed, judicially noticeable records on file with the California Secretary of State demonstrate that Park 2580 was formed on January 26, 2022. (*See* Request for Judicial Notice filed concurrently herewith, Ex. A.)

MOTION TO DISMISS

Complaint that Kissler failed to honor or pay for the Subsequent Purchase Orders (nor is there any dispute that Kissler did so).

On the basis of these alleged facts, Plaintiffs proceed to allege claims for breach of written contract, breach of implied contract, and promissory estoppel.

## IV.   THE COURT SHOULD DISMISS PLAINTIFFS' CONTRACT AND PROMISSORY ESTOPPEL CLAIMS WITH PREJUDICE

### A. PLAINTIFFS FAIL TO STATE A CLAIM FOR BREACH OF WRITTEN CONTRACT

To assert a breach of contract claim, the plaintiff must plead facts demonstrating the following elements: "(1) existence of the contract, (2) performance by the plaintiff or excuse for nonperformance, (3) breach by the defendant, and (4) damages." *Tom Trading, Inc. v. Better Blue, Inc.*, 26 Fed. Appx. 733, 735 (9th Cir. 2002). Here, Plaintiffs have not alleged facts demonstrating the existence of a contract with respect to the December 17, 2021 Purchase Orders.

For a court to find the existence of a contract, there must be an offer, acceptance, and mutual intention to contract. *Krottner v. Starbucks Corp.*, 406 Fed. Appx. 129, 131 (9th Cir. 2010). Further, the acceptance must be in terms of the offer and it must be communicated to the offeror. Under basic contract law "'[a]n offer must be sufficiently definite, or must call for such definite terms in the acceptance that the performance promised is reasonably certain.'" *Ladas v. California State Automobile Assn.*, 19 Cal. App. 4th 761, 770 (1993). "Acceptance of an offer, which may be manifested by conduct as well as by words, must be expressed or communicated by the offeree to the offeror." *Russell v. Union Oil Co.*, 7 Cal. App. 3d 110, 114 (1970). Existence of mutual consent is determined by objective rather than subjective criteria—the test being what the outward manifestations of consent would lead a reasonable person to believe. *Monster Energy Co. v. Schechter*, 7 Cal. 5th 781, 789 (2019). "[T]erms proposed in an offer must be met exactly, precisely and unequivocally for its acceptance to result in the formation of a binding contract; and a

qualified acceptance amounts to a new proposal or counteroffer putting an end to the original offer." *Panagotacos v. Bank of America*, 60 Cal. App. 4th 851, 855–56 (1998).

Plaintiffs' breach of contract claim[5] fatally relies on the allegation that Kissler "repudiated its commitments to purchase all the goods that were fabricated according to Kissler's December 17, 2021 purchase orders." (Compl., ¶ 19.)  As the facts detailed in Section III, above, demonstrate, however, the alleged December 17, 2021 Purchase Orders never formed a contract as a matter of law.  First, Mr. He responded immediately (the same day) to the purchase orders, in writing, by *rejecting* a product price set forth in the orders, and requesting that revised purchase orders be issued instead.  (Kissler Decl., Ex. B ("From one look at the POs, item 70685, Moen BN, **$11.39 not $9.36.  Please re-send me those POs.**") (emphasis added).)  Moreover, Kissler did **not** reissue the purchase orders; rather (still on the same day), Kissler replied, "Please hold off on the POs.  HD [Home Depot] is asking for another week and are going to push back the May date.  Sorry but they just called me.  Please confirm."  (Kissler Decl., Ex. B.)  Mr. He did indeed confirm, the same day: "Got it, no problem."  (*Id.*)

Thus, a contract was not formed because Plaintiffs' response was not an acceptance of Kissler's offer but rather a counteroffer, *i.e.*, Plaintiffs did not accept the December 17, 2021 Purchase Orders but rather replied that their pricing was incorrect and requested that revised orders be submitted instead.  *See Landberg v. Landberg*, 24 Cal. App. 3d 742, 750 (1972) ("qualified acceptance constitutes a rejection terminating the offer; it is a new proposal or counteroffer which must be accepted by the former

---

[5] There are two plaintiffs in this action, *i.e.*, SHLA and Park 2850.  It is unclear from the Complaint which of the two plaintiffs is asserting which cause(s) of action.  Kissler reserves all rights with respect to this issue and related issues of standing, but as detailed herein, none of the three causes of action at issue is adequately pleaded, in any event.  As such, for the sake of convenience and simplicity, throughout this brief Kissler often refers to the two "Plaintiffs," collectively (as they have done in their Complaint).

offeror now turned offeree before a binding contract results").  For this reason, alone, Plaintiffs' contract claim fails.  Further, the parties expressly confirmed, in writing, that they would not proceed with the December 17, 2021 Purchase Orders, in any event.

As still further confirmation of the above: six days later, Kissler sent an email to Mr. He, attaching a *new* purchase order (no. 10127), and stating, "Here is your opening order. ...  Please let me know if this can ship by April 1st the latest."  (Kissler Decl., Ex. C.)  Mr. He responded that same day, "Are we going to keep the previous 3 POs or cancel?  What's the total plan for shipments?"  (*Id.*)  Kissler replied, the same day, "For now cancel the previous 3.  We won't know about those until Jan so I can always re-write.  For the PO I just sent, please ship whenever it's ready."  (*Id.*)  Finally, Mr. He responded later that day, "Ok, will do.  Thanks!"  (*Id.*)

Even if *arguendo* the Court were to find that Plaintiffs have alleged the formation of an initial contract by way of the December 17, 2021 Purchase Orders (which it should not), the Court should nonetheless find that such contract was modified by mutual assent of the parties via Kissler's offer, and Plaintiffs' acceptance, of the December **23**, 2021 purchase order, with both parties confirming the cancellation of the earlier December 2021 Purchase Orders.  "It is axiomatic that the parties to an agreement may modify it." *Vella v. Hudgin,* 151 Cal. App. 3d 515, 519 (1984). "A contract can, of course, be subsequently modified with the assent of the parties thereto, provided the same elements essential to the validity of the original contract are present." *Carlson, Collins, Gordon & Bold v. Banducci*, 257 Cal. App. 2d 212, 223 (1967).

Finally, separate and apart from the foregoing fundamental defects in Plaintiffs' claim, the Court should also dismiss Plaintiffs' cause of action for breach of written contract for the additional reason that Plaintiffs have not attached the operative agreement, nor sufficiently alleged the substance and terms of the alleged contract.  In alleging the existence of the contract, a "plaintiff may set forth the contract verbatim in

the complaint or plead it, as indicated, by exhibit, or plead it according to its legal effect." *Buchanan v. Neighbors Van Lines*, No. CV 10 6206 PSG (RCx), 2010 WL 4916644, *5 (C.D. Cal. Nov. 29, 2010).  In order to plead a contract's legal effect, a plaintiff must "allege the substance of its relevant terms," which is more difficult than pleading the contract's precise language because it "requires a careful analysis of the instrument, comprehensiveness in statement, and avoidance of legal conclusions." *Parrish v. NFL Players Ass'n*, 534 F. Supp. 2d 1081, 1094 (N.D. Cal. 2007).

Here, Plaintiffs fail to allege the contract's terms, including what provisions of the relevant contract were alleged breached by Kissler and how.  Instead, the Complaint alleges as a mere legal conclusion that "Kissler has repudiated its commitments to purchase all the goods that were fabricated according to Kissler's December 17, 2021 purchase orders.  Kissler has ceased issuing additional purchase orders . . . " (Compl. ¶ 19), but does not specify which products were entailed by the alleged December 17, 2021 Purchase Orders, or whether any contract terms existed such that "ceas[ing] additional purchase orders" constituted a breach.  Plaintiffs also allege as a mere legal conclusion that they "performed their obligations under the contract except for terms of the contract that have been excused" (Compl., ¶ 33), without ever specifying what conditions, covenants, and promises were provided for under the alleged contract.

For each of the foregoing reasons, the Court should dismiss Plaintiffs' claim for breach of written contract.

## B. PLAINTIFFS FAIL TO STATE A CLAIM FOR BREACH OF IMPLIED CONTRACT

Plaintiffs' breach of implied contract claim fares no better.  While a contract may be implied, it still must satisfy the requirements of contract formation.  "An express contract is one, the terms of which are stated in words[,]" (Cal. Civ. Code § 1620) whereas "[a]n implied contract is one, the existence and terms of which are manifested by ***conduct***."  Cal. Civ. Code § 1621 (emphasis added); *Marvin v. Marvin,*

18 Cal. 3d 660, 678, n. 16 (1976) ("If the agreement is shown by the direct words of the parties, spoken or written, the contract is said to be an express one. But if such agreement can only be shown by the acts and conduct of the parties, interpreted in the light of the subject-matter and of the surrounding circumstances, then the contract is an implied one.").

"The very heart of an enforceable implied in fact contract is the mutual intention of the parties; hence the assumption, intention or expectation of either party alone can give rise to no inference of an implied contract." *Div. of Lab. L. Enf't v. Transpacific Transportation Co*., 69 Cal. App. 3d 268, 277 (1977); citing *Gold v. Gibbons*, 178 Cal. App. 2d 517, 520 (1960).  For a court to find the existence of a contract, there must be an offer, acceptance, and mutual intention to contract.  *Krottner v. Starbucks Corp*., 406 Fed. Appx. 129, 131 (9th Cir. 2010).  Further, the acceptance must be in terms of the offer and it must be communicated to the offeror.  Under basic contract law "'[a]n offer must be sufficiently definite, or must call for such definite terms in the acceptance that the performance promised is reasonably certain.'" *Ladas v. California State Automobile Assn*., 19 Cal. App. 4th 761, 770 (1993).  "Acceptance of an offer, which may be manifested by conduct as well as by words, must be expressed or communicated by the offeree to the offeror." *Russell v. Union Oil Co*., 7 Cal. App. 3d 110, 114 (1970).  Existence of mutual consent is determined by objective rather than subjective criteria—the test being what the outward manifestations of consent would lead a reasonable person to believe.  *Monster Energy Co. v. Schechter*, 7 Cal. 5th 781, 789 (2019).

To survive a motion to dismiss, a plaintiff must plead details including when the implied contract took effect, how it was formed, and its specific terms.  *Allen v. Nextera Energy Operating Servs., LLC*, No. C 12-01610 LB, 2012 WL 1918930, at *2 (N.D. Cal. May 25, 2012).  Here, Plaintiffs fall woefully short of these requirements.

Plaintiffs allege in vague and conclusory terms that "[a]n implied contract exists between the parties that require[s] Defendant to issue sufficient orders so that

Defendant can defray the initial cost of setting up the manufacturing lines including cost of tooling." (Compl., ¶ 37.) After a thorough review of Plaintiffs' 10-page Complaint, it is unclear what "conduct" Plaintiffs contend created an implied contract of *any* sort, let alone a contract with the terms Plaintiffs have alleged. In fact, Plaintiffs do not seem to be relying on Kissler's *conduct* at all (as would be required to demonstrate an implied contract), but rather its *words*—words which do not create contractual obligations, in any event. For instance, Plaintiffs allege that Kissler informed Plaintiffs "via email that it 'won some home depot business.'" (Compl., ¶ 12.) Plaintiffs also allege that Kissler requested price confirmation and "provided the target purchase volume." (Compl., ¶ 12.) In another email, Plaintiffs allege that Kissler stated "it expected shipments of '4 times a year.'" (Compl., ¶ 13.)

None of these allegations supports the existence of any implied contract—even if the allegations are taken at face value. Moreover, the allegations selectively quote from the subject emails and omit important surrounding context and detail, and in some cases simply misrepresent what was stated in the emails. In particular, Plaintiffs' allegation that Kissler stated in an email that "it expected shipments of '4 times a year'" is at best misleading. The email Plaintiffs are referencing came in response to Mr. He's email, asking, "In the future, how often is the shipment?" Kissler's actual response (from which the Complaint selectively quotes) was, "**I think** shipments will be 4 times a year, **but I don't know** until we start doing business with the[m] [*i.e.,* Home Depot]." (Kissler Decl., Ex. A (emphasis added).) Similarly, Plaintiffs' contention that Kissler "provided the target purchase volume" in a July 7, 2021 email is inaccurate. In reality, the email stated that Home Depot "shared some usage with me, so as you can see it's a lot of business," and then provided a table which apparently showed historical volumes provided by Home Depot. (*Id.*) In response, Mr. He asked, "What's the quantities for the initial order and when?" (*Id.*) Kissler replied, "The annual usage is shown below. I would assume the initial order will be half that amount." (*Id.*)

Moreover, even if *arguendo* these emails supported the existence of an "implied contract" to purchase some undefined quantity of product (which they do not), as detailed in Section III, above, Plaintiffs have effectively *conceded* that Kissler purchased in excess of **$1 million** worth of products from them, by way of the Subsequent Purchase Orders—Plaintiffs' apparent gripe is that Kissler failed to purchase a full **$2 million** worth of products consistent with the December 17, 2021 Purchase Orders (which, as detailed above, Plaintiffs rejected and, further, the parties confirmed in writing were not operative).

In sum, nowhere in their Complaint do Plaintiffs show the basic contract principles of offer, acceptance, or description of specific terms. Under *Twombly* and *Iqbal*, merely stating that a contract exists is insufficient to maintain a breach of contract claim. *See Iqbal*, 556 U.S. at 678 (citation omitted) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). Further, unilateral, subjective expectations do not create a contract right. *See Zenith Ins. Co. v. O'Connor*, 148 Cal. App. 4th 998, 1010 (2007) (plaintiff did not adequately allege implied contract based on subjective belief). Since Plaintiffs have failed to plausibly allege offer, acceptance, or specific terms, their claim for breach of implied contract should be dismissed as there is no objective metric by which to measure mutual assent.

### C. PLAINTIFFS FAIL TO STATE A CLAIM FOR PROMISSORY ESTOPPEL

"In California, the elements of promissory estoppel are (1) a promise clear and unambiguous in its terms; (2) reliance by the party to whom the promise is made; (3) the reliance must be both reasonable and foreseeable; and (4) the party asserting the estoppel must be injured by his reliance. *Mend Health, Inc. v. Carbon Health Techs., Inc.*, 588 F. Supp. 3d 1049, 1056 (C.D. Cal. 2022).

However, the doctrine of promissory estoppel is inapplicable where commercial parties bargain for consideration. *Youngman v. Nevada Irr. Dist.*, 70 Cal. 2d 240, 249

(1969).

### i. The Doctrine Of Promissory Estoppel is Inapplicable Where Commercial Entities Bargain for Consideration

As a threshold matter, the doctrine of promissory estoppel is simply inapplicable to the facts alleged here, which involve sophisticated commercial parties bargaining over potential business.

Promissory estoppel is an equitable doctrine which "employs equitable principles to satisfy the requirement that consideration must be given in exchange for the promise sought to be enforced." *Poway Royal Mobilehome Owners Ass'n v. City of Poway*, 149 Cal. App. 4th 1460, 1471 (2007) (citations omitted). The purpose of this doctrine is "to make a promise binding, under certain circumstances, without consideration in the usual sense of something bargained for and given in exchange." *Youngman*, 70 Cal. 2d at 249. In essence, the doctrine will compensate only those parties who are the beneficiaries of unilateral promises without bargained-for consideration, under certain circumstances.

The doctrine of promissory estoppel is inapplicable, however, where commercial parties bargain for benefit or consideration. *See Healy v. Brewster*, 59 Cal. 2d 455, 463 (1963) ("The doctrine of promissory estoppel is inapplicable where the promisee's performance was requested by the promisor at the time the promise was made."). "[W]here the promisee's reliance was bargained for, the law of consideration applies; and it is only where the reliance was unbargained for that there is room for application of the doctrine of promissory estoppel." *Youngman*, 70 Cal. 2d at 250. Where the alleged reliance was actually part of the alleged bargain, the claim is subject to dismissal. *See Youngman*, 70 Cal. 2d at 250.

Here, Plaintiffs' purported reliance rests on their allegation that "in reliance of Kissler's representation of anticipated substantial Home Depot orders, Park 2580 arranged for the Chinese manufacturer to invest and create all the tooling needed to manufacture the products. Park 2580 made arrangement for the Chinese manufacturer

to make all the products needed to fulfill Kissler's December 17, 2021 purchase order." (Compl. ¶¶ 17-18.) This alleged reliance, however, would necessarily be part of the alleged bargained-for exchange between Plaintiffs and Kissler (even setting aside, for the moment, that the alleged "reliance" on the December 17, 2021 Purchase Orders occurred more than a month **after** Plaintiffs had rejected those orders via a counter-offer, and after the parties had confirmed, in writing, that the orders were not operative). (Compl., ¶¶ 13-14.)

As such, the allegations of the complaint, taken as true, fail to state a claim for promissory estoppel. The same transaction and negotiation which purportedly creates the right to Plaintiffs' contract damages is not a form of unbargained-for reliance. "If the promisee's performance was requested at the time the promisor made his promise and that performance was bargained for, the doctrine is inapplicable." *Youngman*, 70 Cal. 2d at 249. This result flows logically from the fact that the purpose of the promissory estoppel doctrine is to offer, in certain circumstances, a method of relief to parties who cannot allege bargained-for consideration. *See Walker v. KFC Corp.*, 728 F.2d 1215, 1219 (9th Cir. 1984) ("Promissory estoppel is not a doctrine designed to give a party to a negotiated commercial bargain a second bite at the apple in the event it fails to prove a breach of contract."); *Horne v. Harley-Davidson, Inc*., 660 F. Supp. 2d 1152, 1163 (C.D. Cal. 2009) (granting motion to dismiss promissory estoppel claim based upon same facts as alleged contract); *Chavez v. CITI mortgages, Inc*., No. 5:12-CV-1617-SVW-OP, 2012 WL 12895843, at *4 (C.D. Cal. Dec. 19, 2012) (same).

### ii. Plaintiffs Fail to State a Claim for Promissory Estoppel In Any Event

Even if, *arguendo*, the doctrine of promissory estoppel could apply in this case, Plaintiffs fail to adequately allege either (1) the existence of a clear and unambiguous promise; or (2) Plaintiffs' reasonable and foreseeable reliance on that promise.

"The cases are uniform in holding that this doctrine cannot be invoked and must be held inapplicable in the absence of a showing that a promise had been made upon

which the complaining party relied to his prejudice." *Div. of Lab. L. Enf't v. Transpacific Transportation Co.*, 69 Cal. App. 3d 268, 277 (1977). "The promise must, in addition, be 'clear and unambiguous in its terms.'" *Garcia v. World Savings, FSB*, 183 Cal. App. 4th 1031, 1044 (2010). The promise must be "'definite enough that a court can determine the scope of the duty[,] and the limits of performance must be sufficiently defined to provide a rational basis for the assessment of damages.'" *Id*.

"A plaintiff's misguided belief or guileless action in relying on a statement on which no reasonable person would rely is not justifiable reliance if the conduct of the plaintiff in the light of his own intelligence and information was manifestly unreasonable, . . . he will be denied a recovery. A mere hopeful expectation cannot be equated with the necessary justifiable reliance." *Aceves v. U.S. Bank, N.A.*, 192 Cal. App. 4th 218, 227 (2011), as modified (Feb. 9, 2011) (cleaned up).

Plaintiffs make the following four incongruous allegations in their Complaint which Kissler assumes are Plaintiffs' attempt to allege the existence of a clear and unambiguous promise:

1) *"On July 15, 2021, Kissler confirmed via email that it would be selling under the Home Depot Everbilt brand and again requested price confirmation. Kissler additionally noted that it expected shipments of '4 times a year.'"*[6]  (Compl., ¶ 13.)

2) *"Defendant represented that it expects a large volume of Home Depot business with respect to the universal trim kit."* (Compl., ¶ 36.)

3) *"Defendant made a promise to issue a sufficiently large purchase order, or a sufficiently large series of purchase orders, so that Defendant can defray*

---

[6] As detailed in Sections III, and IV.B, above, Plaintiffs' allegation that Kissler stated in an email that "it expected shipments '4 times a year'"" is misleading, at best. As reflected in the referenced emails, Mr. He asked Kissler, in part, "In the future, how often is the shipment?," and Kissler responded, in part, "**I think** shipments will be 4 times a year, **but I don't know** until we start doing business with the[m] [*i.e.*, Home Depot]." (Kissler Decl., Ex. A) (emphasis added). As such, Plaintiffs had no reasonable expectation with respect to any future orders.

*the initial cost of setting up the manufacturing lines including the cost of tooling.*" (Compl., ¶ 41.)

4) *"Defendant made a promise to order at least hundreds of thousands of the universal trim kit products as early as December 2021.*" (Compl., ¶ 42.)

There is nothing "clear and unambiguous" in these alleged promises of "a large volume of business," "a sufficiently large purchase order," and the like, and for this reason, alone, the claim fails. *See, e.g., Garcia, FSB*, 183 Cal. App. 4th at 1044. The Complaint provides no detail as to what might constitute a "sufficiently large purchase order" for Plaintiffs to "defray the initial cost of setting up the manufacturing lines including the cost of tooling"—let alone facts demonstrating that *Kissler* would even *know* what Plaintiffs' own tooling costs were, to such a degree that Kissler could have made a clear and unambiguous "promise" to order goods in that volume. And to the extent Plaintiffs allege Kisser "made a promise to order at least hundreds of thousands of the universal trim kit products as early as December 2021," they can only be referring to the December 17, 2021 Purchase Orders—which as detailed above were extinguished by Plaintiffs' own conduct and, further, the parties confirmed in writing were not operative.

Additionally, the Complaint does not plausibly allege reliance at all—let alone reasonable and foreseeable reliance, as is required. First, as discussed above, just a few hours elapsed over the course of (1) Kissler sending the December 17, 2021 Purchase Orders to Plaintiffs, (2) Plaintiffs rejecting those orders and countering with a different product price, and requesting new purchase orders, (3) Kissler replying, "Please hold off on the POs. [HOME DEPOT] is asking for another week and are going to push back the May date. Sorry but they just called me. Please confirm[,]" and finally (4) Plaintiffs responding, "Got it, no problem." As such, the notion that Plaintiffs placed any reliance on such an exchange is simply implausible.

Further, Plaintiffs describe the purported reliance as follows: "In reliance of Kissler's representation of anticipated substantial Home Depot orders, **Park 2580**

arranged for the Chinese manufacturer to invest and create all the tooling needed to manufacture the products. **Park 2580** made arrangement for the Chinese manufacturer to make all the products needed to fulfill Kissler's December 17, 2021 purchase order." (Compl. ¶¶ 17-18 (emphasis added).)  Although the Complaint does not specify when, exactly, Park 2580 allegedly took these actions in "reliance" on the December 17, 2021 Purchase Orders, it cannot possibly have occurred any earlier than January 2022, as the Complaint acknowledges (and judicially noticeable records confirm) that Park 2580 did not even exist prior to January 2022—**after** the December 17, 2021 Purchase Orders were extinguished, both by Plaintiffs' rejection of them and, further, by mutual agreement of the parties, as detailed in the preceding sections.

In sum, the Complaint's alleged facts (and incorporated documents) reveal that what Plaintiffs are labeling as "reliance" was, *at best*, a "mere hopeful expectation [that] cannot be equated with the necessary justifiable reliance." *Aceves*, 192 Cal. App. 4th at 227; *Weinstein v. Meritor, Inc.*, No. 2:16-CV-01076, 2017 WL 4397947, at *3 (D. Nev. Sept. 29, 2017) (holding mere discussions and negotiations surrounding potential purchase orders lacks the requirements of a clear and definite promise).

## V.   CONCLUSION

Because each of Plaintiffs claims is inadequately alleged, and incapable of being cured through amendment, Kissler respectfully requests the Court grant its motion and dismiss Plaintiffs' claims for (1) breach of contract; (2) breach of implied contract; and (3) promissory estoppel, without leave to amend, and with prejudice.

Respectfully submitted,

Dated:  January 16, 2024

K&L GATES LLP

By /s/ *Kevin G. Sullivan*
Ronie M. Schmelz
Kevin S. Asfour
Kevin G. Sullivan

*Attorneys for Defendant*
KISSLER AND CO. INC.

## CERTIFICATE OF COMPLIANCE WITH L.R. 11-6.1

The undersigned, counsel of record for Defendant certifies that this brief contains 6353 words, which complies with the word limit of L.R. 11-6.1.

**K&L GATES LLP**

Dated:  January 16, 2024

By:  /s/ Kevin G. Sullivan
Kevin G. Sullivan

*Attorneys for Defendant*
*KISSLER AND CO. INC.*

MOTION TO DISMISS