**K&L GATES LLP**
Ronie Schmelz (State Bar No. 130798)
ronie.schmelz@klgates.com
(310) 552-5002
Kevin Asfour (State Bar No. 228993)
kevin.asfour@klgates.com
(310) 552-5016
Kevin Sullivan (State Bar No. 341596)
kevin.sullivan@klgates.com
(310) 552-5072
10100 Santa Monica Blvd.
Floor 8
Los Angeles, CA 90067

Attorneys for Defendant
KISSLER AND CO. INC.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| SHLA GROUP INC., PARK 2580, INC., | Case No. 2:23-cv-07567-TJH-BFM |
| Plaintiffs, | [Hon. Judge Terry J. Hatter, Jr.] |
| v. | **DEFENDANT KISSLER AND CO. INC'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS VARIOUS CAUSES OF ACTION IN PLAINTIFFS' COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES** |
| KISSLER AND CO. INC. | |
| Defendant. | |
| | Date:        March 4, 2024 |
| | Time:        UNDER SUBMISSION |
| | Courtroom:   9C |

REPLY IN SUPPORT OF KISSLER'S MOTION TO DISMISS

507435392.4

# **TABLE OF CONTENTS**

I.   INTRODUCTION ............................................................................................ 1

II.  PLAINTIFFS' ARGUMENTS IN OPPOSITION ARE UNAVAILING ........... 2

    A.   The Court Can and Should Consider the Email Communications Submitted With Kissler's Motion Under the Incorporation By Reference Doctrine ..................................................................................... 2

    B.   Plaintiffs' Arguments Do Not Salvage Their Claim for Breach of Written Contract ................................................................................... 7

        1.   The December 17, 2021 Purchase Orders Do Not Constitute a Contract Under the UCC ................................................................. 8

        2.   Even if *Arguendo* the December 17, 2021 Purchase Orders Formed a Contract, the Parties Expressly Agreed to Modify It By "Cancelling" the December 17, 2021 Purchase Orders (and Entering Into New Purchase Orders) ............................................ 11

    C.   Plaintiffs' Arguments Do Not Salvage Their Claim For Breach of Implied Contract ...................................................................................... 13

    D.   Plaintiffs' Arguments Do Not Salvage Their Promissory Estoppel Claim ......................................................................................................... 16

III. CONCLUSION ............................................................................................. 19

REPLY IN SUPPORT OF KISSLER'S MOTION TO DISMISS

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Aton Ctr., Inc. v. United Healthcare Ins. Co.*,
    93 Cal. App. 5th 1214 (2023) ...................................................................12

*Body Jewelz, Inc. v. Valley Forge Ins. Co.*,
    241 F. Supp. 3d 1084 (C.D. Cal. 2017) ...............................................5, 6

*Bustamante v. Intuit, Inc.*,
    141 Cal. App. 4th 199 (2006) .................................................................13

*Challenge Printing Co., Inc. v. Electronics for Imaging, Inc.*,
    500 F. Supp. 3d 952 (N.D. Cal. 2020).........................................9, 10, 11

*Europa Auto Imports, Inc. v. Int'l Ass'n of Machinists & Aerosapce*
    *Workers Loc. Lodge No. 1484*,
    No. 22-1987, 2023 WL 7225003 (S.D. Cal. Nov. 2, 2023) ....................5

*Frank M. Booth, Inc. v. Reynolds Metals Co.*,
    754 F. Supp. 1441 (E.D. Cal. 1991) .......................................................15

*Frenzel v. AliphCom*,
    76 F. Supp. 3d 999 (N.D. Cal. 2014)......................................................12

*Healy v. Brewster*,
    59 Cal. 2d 455 (1963) .............................................................................18

*Khoja v. Orexigen Therapeutics, Inc.*,
    899 F.3d 988 (9th Cir. 2018) ...............................................................3, 6

*Knievel v. ESPN*,
    393 F.3d 1068 (9th Cir. 2005) ..................................................................5

*In re NVIDIA Corp. Sec. Litig.*,
    768 F.3d 1046 (9th Cir. 2014) ..................................................................6

*Precision Orthopedic Implants Inc. v. Limacorporate S.P.A.*,
    No. 16-2945, 2016 WL 7378878 (C.D. Cal. Dec. 20, 2016) ..................6

*Russ, Aug. & Kabat, Prof'l. Corp. v. Am. Motorists Ins. Co.*,
    No. 07-5588, 2008 WL 11343032 (C.D. Cal. Aug. 26, 2008).............12

ii

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

*Steiner v. Mobil Oil Corp.*,
  20 Cal. 3d 90 (1977) ..........................................................................9, 10

*Textile Unlimited v. A.BMH and Co., Inc.*,
  240 F.3d 781 (9th Cir. 2001) ..................................................................15

*Trelleborg Sealing Solutions US, Inc. v. Precision Wire Components, LLC*,
  No. 20-1966, 2022 WL 2286486 (C.D. Cal. Apr. 11, 2022)............................14

*Vella v. Hudgin*,
  151 Cal. App. 3d 515 (1984) ...................................................................12

*Weinstein v. Meritor, Inc.*,
  No. 2:16-CV-01076, 2017 WL 4397947 (D. Nev. Sept. 29, 2017) ..................17

*Youngman v. Nevada Irr. Dist.*,
  70 Cal. 2d 240 (1969) .....................................................................18, 19

**Statutes**

Cal. Comm. Code § 2204(1)..................................................................8, 10

Cal. Comm. Code § 2204(3)........................................................................9

Cal. Comm. Code § 2207...........................................................................14

Cal. Comm. Code § 2207(1).......................................................................11

Cal. Comm. Code § 2207(3).................................................................*passim*

Cal. Comm. Code § 2209(1).......................................................................12

Uniform Commercial Code .................................................................*passim*

Uniform Commercial Code § 2-207(a)...........................................................10

Uniform Commercial Code § 2204 .........................................................8, 9, 10

iii

1

**I.**    **INTRODUCTION**

2      Plaintiffs' Opposition to Kissler's Motion to Dismiss, together with their

3 Complaint, is most telling for what they do not say rather than what they do say. In

4 particular, while Plaintiffs' Opposition argues at length for the Court to disregard

5 documents well within the bounds of the incorporation by reference doctrine, it fails to

6 demonstrate how the existence of these emails are not fatal to their claims. Simply put,

7 Plaintiffs submitted a Complaint that expressly references and relies upon the parties'

8 email correspondence, and that is rife with selective and misleading portrayals of those

9 documents that are central to Plaintiffs' claims. And now, when Kissler has presented

10 the documents for the Court to assess, Plaintiffs' only hope is to tell the Court to look

11 away.

12      What is clear from Plaintiffs' Complaint and the briefing now before the Court

13 is that Plaintiffs' breach of written contract, breach of implied contract, and promissory

14 estoppel claims are inadequately pled and have no hope of redemption. Plaintiffs

15 make one last-ditch effort to muddy the waters and argue that if only the UCC rather

16 than general contract principles applied, then its claims could be salvaged. As detailed

17 herein, however, Plaintiffs have blatantly misconstrued and misapplied the provisions

18 of the UCC. Plaintiffs' claims are simply unsalvageable as a matter of law—under the

19 UCC or otherwise.

20      Plaintiffs' breach of written contract claim fails on numerous independent

21 grounds, the arguments in their Opposition notwithstanding. As discussed below, the

22 December 17, 2021 Purchase Orders[1] did not give rise to a binding contract, as a

23 matter of law—even under the UCC. Moreover, even if *arguendo* a contract was

24 formed by way of the December 17, 2021 Purchase Orders, such contract was

25

26 ───────────────

27 [1] As detailed in the Motion, the defined term "December 17, 2021 Purchase Orders" refers to purchase order nos. 10999, 10107 and 10106. Additionally, there are three different, subsequent purchase orders (nos. 10127, 10363 and 10397) referred to in the Motion and herein as the "Subsequent Purchase Orders." Unless otherwise indicated, all capitalized terms herein carry the meanings ascribed to them in the Motion.

28

1

modified by the mutual assent of the parties, in writing, six days later, wherein both sides explicitly agreed to "cancel" the December 17, 2021 Purchase Orders, and at which point the parties began a series of Subsequent Purchase Orders (none of which Kissler is alleged to have breached).

Plaintiffs' argument in support of their implied contract claim fares no better.  In essence, Plaintiffs now argue that the Subsequent Purchase Orders—which are *express* contracts—somehow birthed an "implied contract" that magically revived the December 17, 2021 Purchase Orders that the parties had explicitly "cancelled," in writing.  Plaintiffs offer no logical, legal or common-sense support for this argument, and there is none.

Finally, Plaintiffs' promissory estoppel claim likewise fails on multiple, incurable grounds, including, without limitation: (i) the lack of a "clear promise"; (ii) the logical and temporal impossibility of Plaintiffs' theory of "reliance," namely, that Plaintiffs supposedly took steps in "reliance" on the December 17, 2021 Purchase Orders more than a month *after* the parties had expressly repudiated them in writing; (iii) the lack of alleged facts showing substantial detriment or damages; and indeed (iv) the legal inapplicability of the promissory estoppel doctrine to these facts, in any event.

The Court should grant the Motion in its entirety, without leave to amend.

## II.   PLAINTIFFS' ARGUMENTS IN OPPOSITION ARE UNAVAILING

### A.   The Court Can and Should Consider the Email Communications Submitted With Kissler's Motion Under the Incorporation By Reference Doctrine

Plaintiffs devote a significant portion of their Opposition to arguing that the Court should *not* consider, under the incorporation by reference doctrine, the emails provided with Kissler's Motion—emails that Plaintiffs discuss, rely upon, and even *quote* directly from in their own Complaint, as well as emails transmitting the very purchase orders at issue in Plaintiffs' Complaint.  Contrary to Plaintiffs' contentions in their Opposition, this is *precisely* the scenario that the incorporation by reference

doctrine is designed to address, *i.e.,* where a plaintiff mischaracterizes documents through a selective and misleading portrayal of their contents and import in an effort to plead a claim that, when fairly considered in the full context of those documents, is facially deficient.  *See Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1002 (9th Cir. 2018) ("The doctrine prevents plaintiffs from selecting only portions of documents that support their claims, while omitting portions of those very documents that weaken—or doom—their claims.").  As such, the three email threads between Plaintiffs and Kissler attached to the declaration of Jeffrey Kissler are appropriately incorporated by reference and thus the Court may evaluate them without turning the motion to dismiss into a motion for summary judgment.  Indeed, consideration of the emails is essential to provide full context for Plaintiffs' claims and allegations pertaining to the email discussions, and in several instances to point out misleading characterizations of the emails and corresponding purchase orders.

For example, in one such email dated July 8, 2021, Mr. He (CEO of Plaintiffs) asked Kissler various questions, including, "In the future, how often is the shipment?" (Kissler Decl., Ex A.)  Kissler responded to that question in a July 15, 2021 email, stating, "I think shipments will be 4 times a year, but I don't know until we start doing business with the[m] [i.e., Home Depot]." (Kissler Decl., Ex. A (emphasis added).)  In their Complaint, Plaintiffs have selectively quoted the phrase "4 times a year" from that email, out of context, in an apparent effort to portray it (inaccurately) as some sort of "commitment." (*See* Compl., ¶ 13.)

As another example, Plaintiffs allege that Kissler "provided the target purchase volume" in a July 7, 2021 email.  (*See* Compl., ¶ 12.)  In reality, the email simply stated that Home Depot "shared some usage with me, so as you can see it's a lot of business," and then provided a table which apparently showed historical volumes provided by Home Depot.  (Kissler Decl., Ex. A.)  In response, Mr. He asked, "What's quantities for the initial order and when?"  (*Id.*)  Kissler replied, "The annual usage is shown below. I would assume the initial order will be half that amount."  (*Id.*)

3

Additionally, Plaintiffs allege that "[o]n December 17, 2021, [Kissler] issued three purchase orders to SHLA consisting of PO10999, PO10107, and PO10106" (the "December 17, 2021 Purchase Orders"). (Compl., ¶ 14.)  Plaintiffs further allege, misleadingly, that "the purchase orders specified December 2021 as estimated shipping dates" (Compl., ¶ 14)—when in fact the email transmitting the purchase orders stated, "POs 10106 and 10107 can be shipped after the 2/22 [February 2022] mark. 10106 Target would be April 1 and 10107 would be a May 15th mark."  (Kissler Decl., Ex. B.)  More importantly, that same day (December 17, 2021), and within the span of just a few hours:

      i.    Mr. He responded to the email transmitting the purchase orders, disputing a product price reflected therein ("From one look at the POs, item 70685, Moen BN, $11.39 not $9.36. Please re-send me those POs.") (Kissler Decl., Ex. B (emphasis added));

      ii.    Kissler then replied to Mr. He's email, declining his request to revise and resubmit the purchase orders, stating, "Please hold off on the POs. HD [Home Depot] is asking for another week and are going to push back the May date. Sorry but they just called me. Please confirm;" and

      iii.    Mr. He replied back, "**Got it, no problem**."

(Kissler Decl., Ex. B (emphasis added).)

Then, six days later, on December 23, 2021, Kissler sent an email to Mr. He, attaching a new purchase order (no. 10127),[2] and stating, "Here is your opening order. . . . Please let me know if this can ship by April 1st the latest." (Kissler Decl., Ex. C.) Mr. He responded that same day, "Are we going to keep the previous 3 POs or cancel? What's the total plan for shipments?" (*Id.*) Kissler replied, the same day, "For now cancel the previous 3. We won't know about those until Jan so I can always re-write.

---

[2] Notably, Plaintiffs expressly allege purchase order no. 10127 in their Complaint, but erroneously state that the purchase order was issued on April 13, 2022. (*See* Compl., ¶ 15.)  The transmittal email demonstrates that the purchase order was in fact issued on December 23, 2021.  (*See* Kissler Decl., Ex. C.)

4

1    For the PO I just sent, please ship whenever it's ready." (*Id.*) Mr. He responded later
2    that day, "Ok, will do. Thanks!" (*Id.*)

3         Courts routinely allow incorporation by reference in such circumstances.  For
4    example, in *Knievel v. ESPN*, the court "affirmed the incorporation of materials that
5    the complaint did not reference at all."  393 F.3d 1068, 1076 (9th Cir. 2005).  In
6    *Knievel*, the plaintiff alleged that the defendant defamed him and his wife by posting a
7    particular photo of plaintiff and his wife on the defendant's website.  *Id*. at 1070.  In
8    the complaint, plaintiff only referenced the allegedly defamatory photo and caption.
9    *Id*. at 1076.  Defendant then submitted the surrounding photos and captions.  *Id*.  Even
10   though the complaint did not "allege or describe the contents of the surrounding
11   pages," the court held it was proper to incorporate them because the claim necessarily
12   depended on them.  *Id*.

13        Further, in *Europa Auto Imports, Inc. v. Int'l Ass'n of Machinists & Aerosapce*
14   *Workers Loc. Lodge No. 1484*, No. 22-1987, 2023 WL 7225003 (S.D. Cal. Nov. 2,
15   2023), the court considered email exchanges provided by defendants under the
16   incorporation by reference doctrine where the plaintiff referenced and "selectively
17   quoted" the emails in its complaint.  *Id.* at *7.

18        The cases cited by Plaintiffs for the proposition that incorporation by reference
19   is inappropriate here are inapposite.  Plaintiffs assert that the court in *Body Jewelz, Inc.*
20   *v. Valley Forge Ins. Co*., 241 F. Supp. 3d 1084, 1089–90 (C.D. Cal. 2017) "refus[ed] to
21   incorporate a Hosting Agreement and a Universal Terms of Service Agreement into
22   the plaintiff's complaint because they did not constitute the entire final contract
23   between the parties." (Opp., p. 8:22-25.)  However, the court in *Body Jewelz* declined
24   to incorporate by reference the documents at issue because there were "questions about
25   the authenticity of the documents" and the court was "wary of considering these
26   generic agreements, which obviously do not constitute the entire final contract between
27   the parties." *Id*. at 1090.  Likewise, in *Precision Orthopedic Implants Inc. v.*
28   *Limacorporate S.P.A*., No. 16-2945, 2016 WL 7378878 (C.D. Cal. Dec. 20, 2016), that

5

court, like the court in *Body Jewelz*, refused to allow a purportedly final version of a contract to be admitted because, while the plaintiffs had submitted a draft and final version of a contract, the defendants submitted a version that "appear[ed] to be neither wholly drafts, nor wholly final versions." *Id.* at *3.  Here, Plaintiffs do not dispute the authenticity of any of the emails.

Plaintiffs' reliance on *Honeycutt v. City of Los Angeles* is similarly misplaced. There, the court declined to take notice of the cause of death in a *judicially noticed* death certificate—not a document incorporated by reference into plaintiff's complaint. Documents incorporated into the complaint by reference are "assume[d] ... [to be] true for purposes of a motion to dismiss." *Khoja*, 899 F.3d at 1003 (*quoting Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006)); *In re NVIDIA Corp. Sec. Litig.*, 768 F.3d 1046, 1058 n.10 (9th Cir. 2014) ("Once a document is deemed incorporated by reference, the entire document is assumed to be true for purposes of a motion to dismiss, and both parties—and the Court—are free to refer to any of its contents.") Here, Kissler offered the exhibits to the declaration of Jeffrey Kissler under the incorporation by reference doctrine; it did not seek judicial notice of the documents. (*See* Mot. at 5:6-25.)  In any event, the emails that Kissler provided with its Motion are offered simply to show *what was said*, *by whom*, and *when*.  In other words, the only "facts" proffered by the exhibits are the existence of the statements, themselves (and Plaintiffs do not dispute the authenticity of the emails).  Thus, contrary to Plaintiffs' suggestion in their Opposition, the Motion is not relying on any "factual assertions" embedded in the emails, such that Kissler would be asking the Court effectively to treat the statements as testimony.  (*See* Opp., p. 9:2-18.)

Lastly Plaintiffs' protestation that "Defendant cherry-picks a subset of communications between the parties" (Opp., p. 8:16) is unfounded and disingenuous. Kissler provided email threads that Plaintiffs, themselves, directly referenced in the Complaint and/or which transmitted the purchase orders referenced in the Complaint. There was no "cherry-picking."  Moreover, to the extent Plaintiffs actually believe that

consideration of other surrounding emails is necessary for context, they apparently felt perfectly free to supply them—furnishing with their Opposition a declaration from Mr. He which both attaches three (either irrelevant or already-provided) emails, and goes further and makes numerous declarative statements.

Plaintiffs cannot have it both ways.  The Court should not permit them to rely upon and selectively quote from emails in their Complaint—and indeed, even to supply *new* emails and allegations in connection with this motion—yet turn a blind eye to the actual documents.  The law is clear that the Court can and should consider the emails provided with Kissler's Motion under the incorporation by reference doctrine.

B.    **Plaintiffs' Arguments Do Not Salvage Their Claim for Breach of Written Contract**

The Complaint's cause of action for breach of written contract is based upon Kissler's alleged failure to comply with the December 17, 2021 Purchase Orders.  (*See* Compl., ¶ 32.)  In its Motion, Kissler demonstrated that the claim fails as a matter of law for multiple, independent reasons.  (*See* Motion, § IV.A.)  In sum:

**First**, there was never a contract formed by the December 17, 2021 Purchase Orders, as Plaintiffs rejected those orders, requesting that Kissler modify the price listed thereon and resubmit them, and Kissler *declined* to resubmit them, stating (the same day) that it would "hold off" for the time being, based upon new communications it had just received from Home Depot (to which Plaintiffs responded, "Got it, no problem.").  (*See id.*)  As such, no agreement was ever formed as to the December 17, 2021 Purchase Orders.

**Second**, even if *arguendo* an ephemeral "contract" was somehow formed by the December 17, 2021 Purchase Orders (which is plainly not the case), any such agreement was expressly modified with the assent of both parties, when Kissler submitted a new purchase order (no. 10127) six days later on December **23**, 2021—at which point (i) Plaintiffs asked, "Are we going to keep the previous 3 POs **or cancel**?"; (ii) Kissler replied, the same day, ""For now **cancel** the previous 3. We

7

won't know about those until Jan so I can always re-write."; (iii) Plaintiffs responded, "OK, will do. Thanks!"; and (iv) the parties proceeded to effectuate that new purchase order. (Kissler Decl., Ex. C (emphasis added).) Thereafter, Kissler submitted two additional purchase orders in succession (no. 10363 and 10397), both of which Plaintiffs also accepted (and there is no dispute that Kissler paid for all products ordered pursuant to these three Subsequent Purchase Orders). As such, to the extent the December 17, 2021 Purchase Orders had any legal significance as of six days later (which they did not), there is no question that they were nonetheless expressly "cancelled," in the words of *both* parties, no later than December 23, 2021.

As detailed below, Plaintiffs' Opposition does not and cannot refute any of this, legally or factually.

1.  The December 17, 2021 Purchase Orders Do Not Constitute a Contract Under the UCC

Plaintiffs' reliance on Section 2204 of the Uniform Commercial Code in an effort to portray the December 17, 2021 Purchase Orders as a binding contract is entirely unavailing, for multiple reasons. (*See* Opp., p. 10:9-10 ("Section 2204 of the Commercial Code governs the question of contract formation in this case.").) Although as an abstract principle it is true that a contract *can* arise under the UCC even if certain terms of the agreement have not been settled, for such a contract to arise both parties must nonetheless *manifest an agreement* and *take action in recognition of it*. Indeed, this is explicitly stated in the text of Section 2204, itself, which provides that a contract is made "in any manner sufficient to **show agreement**, including **conduct by both parties which recognizes the existence of such a contract**." Cal. Comm. Code § 2204(1) (emphasis added). Here, as detailed in the Motion and noted above, the parties' communications surrounding the December 17, 2021 Purchase Orders most certainly do *not* show agreement to proceed with those purchase orders, nor does the parties' conduct recognize the existence of a "contract" in those purchase orders— quite the contrary.

8

The case law on which Plaintiffs rely in the Section 2204 context is thus inapposite, as those cases involved parties who *proceeded to buy and sell goods pursuant to a given purchase order*, but ultimately differed as to which party's boilerplate "terms and conditions" would govern, *i.e.*, the so-called "Battle of the Forms." *See, e.g., Challenge Printing Co., Inc. v. Electronics for Imaging, Inc.*, 500 F. Supp. 3d 952, 961-62 (N.D. Cal. 2020) (where plaintiff and defendant proceeded to purchase and deliver goods pursuant to a purchase order, "the parties entered into a binding contract, even though they had separate terms and conditions... and [t]he question then becomes whose terms and conditions apply"); *see also Steiner v. Mobil Oil Corp.*, 20 Cal. 3d 90, 103-04 (1977) (where plaintiff purchased fuel from defendant for a period in excess of one year, the UCC would resolve any discrepancies in the parties' competing terms and conditions). In that scenario—where the parties actually *proceed* with the purchase order—the UCC may supply any missing terms and/or terms that are in conflict under the parties' competing terms and conditions by way of so-called "gap-filling." *See* Cal. Comm. Code § 2204(3) ("Even though one or more terms are left open a contract for sale does not fail for indefiniteness **if the parties have intended to make a contract** and there is a reasonably certain basis for giving an appropriate remedy.") (emphasis added); *see also* Cal. Comm. Code § 2207(3) ("Conduct by both parties which recognizes the existence of a contract is sufficient to establish a contract for sale although the writings of the parties do not otherwise establish a contract. In such case the terms of the particular contract consist of those terms on which the writings of the parties agree, together with any supplementary terms incorporated under any other provisions of this code.").

Here, by contrast, the parties never reached agreement on, or proceeded with, the December 17, 2021 Purchase Orders. Rather, Plaintiffs responded to those purchase orders by requesting that Kissler adjust the prices on them and resubmit them; Kissler declined to do so, based on new information from Home Depot; and the parties expressly confirmed their understanding, in writing, that those purchase orders

9

were *not* operative—all over the span of mere hours.  As such, no contract was ever formed under the requirements of Section 2204.  *See* Cal. Comm. Code § 2204(1) (for a contract to arise, parties must "show agreement, including conduct by both parties which recognizes the existence of such a contract").  Thus, at best, the communications surrounding the December 17, 2021 Purchase Orders reflect "inconclusive negotiations," incapable of supporting a contract as a matter of law.  *See Steiner*, 20 Cal. 3d at 104; *see also id.* at 100 (the court must "determine whether the parties undertook to close their deal").  For this reason, alone, Plaintiffs' arguments under Section 2204 fail.

Moreover, Plaintiffs' contention that a contract was formed under Section 2204 fails for another, independent reason: Plaintiffs have mischaracterized the legal significance of their rejection of the December 17, 2021 Purchase Orders and their request for Kissler to resubmit them with a different price.  In this regard, Plaintiffs argue that "[t]he Commercial Code...'rejects the 'mirror image' rule, and converts a common law counteroffer into an acceptance even though it states additional or different terms."  (Opp., p. 11:9-11 (quoting *Challenge Printing*, 500 F. Supp. 3d at 961 (citing Cal. Comm. Code § 2207)).)  As recognized in the *Challenge Printing* decision itself, though, this principle is subject to an important exception: "UCC § 2-207(a), however, carves out an exception where 'acceptance is expressly made conditional on assent to the additional or different terms.'"  *Challenge Printing*, 500 F. Supp. 3d at 961 (quoting Cal. Comm. Code § 2207(1) ("A definite and seasonable expression of acceptance or a written confirmation which is sent within a reasonable time operates as an acceptance even though it states terms additional to or different from those offered or agreed upon, *unless acceptance is expressly made conditional on assent to the additional or different terms*.") (emphasis added)).  As the *Challenge Printing* court explained, this exception applies "to an acceptance which clearly reveals that the offeree is unwilling to proceed with the transaction unless he is assured

of the offeror's assent to the additional or different terms therein." *Id.* (quoting *Idaho Power Co. v. Westinghouse Elec. Corp.*, 596 F.2d 924, 926 (9th Cir. 1979)).

Here, Plaintiffs' rejection of the December 17, 2021 Purchase Orders coupled with their request that Kissler *re-write and resubmit them* with a different price demonstrates irrefutably that Plaintiffs were unwilling to proceed with the transaction unless assured that Kissler agreed to the adjusted price, and thus Section 2207(1) negates Plaintiffs' theory that their rejection of the December 17, 2021 Purchase Orders somehow operated as an "acceptance" of those purchase orders.  For this reason, too, no contract was formed by the December 17, 2021 Purchase Orders, as a matter of law.

2.    <u>Even if *Arguendo* the December 17, 2021 Purchase Orders Formed a Contract, the Parties Expressly Agreed to Modify It By "Cancelling" the December 17, 2021 Purchase Orders (and Entering Into New Purchase Orders)</u>

As detailed in the Motion and as noted above, even if *arguendo* the December 17, 2021 Purchase Orders amounted to a "contract," the parties expressly agreed, in writing, to "cancel" them.  After initially advising Plaintiffs to "hold off" on those purchase orders on December 17 (the same day they were issued, and rejected), just six days later the parties explicitly agreed, in writing, to "**cancel**" them.  In this discussion, *both* parties used the term "cancel":  After receiving an entirely new purchase order from Kissler on December 23, 2021 (no. 10127), Plaintiffs asked, "Are we going to keep the previous 3 POs or cancel?"  (Kissler Decl., Ex. C.)  Kissler replied, the same day, "For now cancel the previous 3. We won't know about those until Jan so I can always re-write." (*Id.*)  Plaintiffs responded, "OK, will do. Thanks!" (*Id.*), and the parties proceeded with the new purchase order (and, later, two additional purchase orders).

As discussed in the Motion, "It is axiomatic that the parties to an agreement may modify it." *Vella v. Hudgin*, 151 Cal. App. 3d 515, 519 (1984).  Indeed, even if

11

1   *arguendo* the December 17, 2021 Purchase Orders constituted a contract under the

2   UCC as Plaintiffs contend (which it does not, as discussed above), the UCC, itself,

3   provides that such a contract can be modified, even without any additional

4   consideration.  Cal. Comm. Code § 2209(1) ("An agreement modifying a contract

5   within this division needs no consideration to be binding.").

6          In their Opposition, Plaintiffs do not attempt to controvert these basic legal

7   principles.  Instead, they implausibly and unreasonably argue that the word "cancel"

8   does not mean "cancel."  (*See* Opp., p. 17:11-18.)  In support of this tortured reading,

9   they cite the portion of Jeffrey Kissler's December 23, 2021 email wherein he states,

10  "For now cancel the previous 3. We won't know about those until Jan so I can always

11  re-write."[3]  The fact that Kissler left open the theoretical possibility that, after

12  cancelling the orders, he *might* re-write the orders at some later point in no way

13  amounts to a *commitment* to do so, nor does it change the fact that the orders were

14  cancelled, as both parties acknowledged in writing.  Such equivocal language simply

15  cannot create a binding and enforceable agreement. *Russ, Aug. & Kabat, Prof'l. Corp.*

16  *v. Am. Motorists Ins. Co.*, No. 07-5588, 2008 WL 11343032, at *2 (C.D. Cal. Aug. 26,

17  2008) (equivocal language in a letter was "at most, an agreement to make an

18  agreement, and as such of no legal efficacy"); *see also Aton Ctr., Inc. v. United*

19  *Healthcare Ins. Co.*, 93 Cal. App. 5th 1214, 1237 (2023) (a party's "unilateral,

20  subjective impression of [another party's words'] effect falls short of establishing

21  mutual assent").  Further, the context of the cancellation of the December 17, 2021

22  Purchase Orders, as shown above, was Home Depot's request for more time to

23

24  _____

25  [3] In addition, Plaintiffs have effectively sought to "amend" their complaint by
    supplying new factual allegations in their Opposition, supported by a declaration from
    Mr. He.  (*See, e.g.,* Opp., pp. 15:27-17:22.)  "[I]t is axiomatic that the complaint may

26  not be amended by the briefs in opposition to a motion to dismiss." *Frenzel v.*
    *AliphCom*, 76 F. Supp. 3d 999, 1009 (N.D. Cal. 2014) (quoting *Car Carriers, Inc. v.*

27  *Ford Motor Co.*, 745 F.2d 1101, 1107 (7th Cir.1984)).  In any event, even with
    Plaintiffs' new allegations, their claims still fail as a matter of law for the reasons

28  discussed herein.  For this reason, the Court should decline to grant Plaintiffs any
    further leave to amend.

determine its needs.  (*See* Kissler Decl., Exs. B and C.)  As such, any potential for future "re-writing" of the purchase orders is further speculative as it was subject to the actions of a non-party, Home Depot, *potentially* requesting additional units at some later, undetermined date.  *Bustamante v. Intuit, Inc*., 141 Cal. App. 4th 199, 213 (2006) (finding no objective manifestation of intent when "the parties chose not to bind themselves until a subsequent agreement [was] made" which required "significant third-party involvement").

For these reasons, too, Plaintiffs' breach of written contract claim fails as a matter of law—notwithstanding Plaintiffs' implausible and objectively unreasonable reading of the cancellation emails.

**C.**     <u>**Plaintiffs' Arguments Do Not Salvage Their Claim For Breach of Implied Contract**</u>

Plaintiffs' contention that they have adequately pleaded the breach of an implied contract also misses the mark by a wide margin.  Plaintiffs argue that because Kissler issued, and Plaintiffs delivered on, the three Subsequent Purchase Orders, this somehow establishes that an implied in fact contract exists as to the *earlier, three December 17, 2021 Purchase Orders*.  (Opp., p 19:1-19.)  As discussed above, the December 17, 2021 Purchase Orders never formed a contract in the first place, and even if *arguendo* they did, they were mutually cancelled by both Kissler and Plaintiffs. It is undisputed that Kissler fully performed with respect to the Subsequent Purchase Orders.  It does not follow that performance on the later, Subsequent Purchase Orders, implies that the original December 17, 2021 Purchase Orders were still in any way operative—and Plaintiffs offer no logical guidance (let alone legal authority) to resolve this blatant fallacy.

Additionally, Plaintiffs' reliance on Section 2207(3) of the Commercial Code is similarly misplaced and entirely unavailing.  While Plaintiffs state there are "numerous cases" holding that parties' conduct may give rise to a contract under Section 2207(3) even where there is no enforceable written agreement, the few they have chosen to cite

13

for support, and Section 2207(3) itself, are inapposite.  First, Plaintiffs cite to *Trelleborg Sealing Solutions US, Inc. v. Precision Wire Components, LLC*, No. 20-1966, 2022 WL 2286486, *4 (C.D. Cal. Apr. 11, 2022).  However, as the *Trelleborg* court observed, Section 2207 "controls contract interpretation where commercial parties 'exchange forms containing inconsistent provisions.'"  *Id.* at *3 (quoting *Transwestern Pipeline Co. v. Monsanto Co.*, 46 Cal. App. 4th 502 (1996)).  *Trelleborg* provides an overview of when exactly Section 2207(3) is applicable:

> Under Section 2207(1), an acceptance will operate to create a contract even if additional or different terms are stated unless the acceptance is expressly conditioned on assent to the new terms. If a party's acceptance is expressly conditioned on the assent to the new terms, the acceptance operates as a counteroffer, and if the counteroffer is accepted, a contract exists and the additional terms become part of the contract. However, if the counteroffer is not accepted but the parties nonetheless proceed as if they have a contract, Section 2207(3) governs. Under Section 2207(3), conduct by both parties which recognizes the existence of a contract is sufficient to establish a contract for sale. In such a case, the terms of the particular contract consist of those terms on which the writings of the parties agree, together with any supplementary terms provided by the UCC.

*Id*. (cleaned up).

Section 2207(3) is simply inapplicable here as it governs contracts where acceptance is expressly conditioned on additional terms (*i.e.* a counteroffer) and then that counteroffer is not formally accepted but the parties proceed as if the written contract is operative.  Here, as discussed above and in the Motion, (i) the December 17, 2021 Purchase Orders never became operative, as the parties confirmed in writing within the span of just a few hours; and (ii) in any event, the parties explicitly agreed in writing six days later that the December 17, 2021 Purchase Orders were "cancelled."

As detailed in the Motion, the second set of purchase orders, *i.e.*, the Subsequent Purchase Orders, were distinct and separate from the December 17, 2021 Purchase

14

Orders.  Moreover, the parties had an **express** agreement with respect to those Subsequent Purchase Orders, which included, *inter alia*, the prices and quantities of the goods purchased.  There is thus no need or room for an **implied** contract to arise with respect to the Subsequent Purchase Orders.

As such, this is not a dispute involving a "battle of the forms" where contracting parties exchange conflicting forms, such that Section 2207(3)'s "gap-filling" mechanism would even apply.  *See, e.g., Frank M. Booth, Inc. v. Reynolds Metals Co*., 754 F. Supp. 1441, 1445 (E.D. Cal. 1991) (finding Section 2207(3) applied where the parties exchanged separate forms but do not agree on all the terms of their contract); *Textile Unlimited v. A.BMH and Co., Inc*., 240 F.3d 781, 788 (9th Cir. 2001) (same).

Finally, even if *arguendo* Section 2207(3) somehow did apply to Plaintiffs' purported implied contract claim, the statute absolutely cannot and would not "import" the figures from the December 17, 2021 Purchase Orders into any "implied contract" arising from the Subsequent Purchase Orders.  By its own terms, when Section 2207(3) is applicable, "the terms of the particular contract consist of [i] those terms on which the writings of the parties agree, together with [ii] any supplementary terms incorporated under any other provisions of this code."  Cal. Comm. Code § 2207(3).  Here, Plaintiffs' theory is that the Subsequent Purchase Orders somehow give rise to an "implied contract," and that Section 2207(3) will swoop in to supply the "missing" terms of the implied contract.  But even if that were true (which it is not), by statute the only two possible sources of contractual terms would be (i) the Subsequent Purchase Orders, and (ii) the provisions of the UCC.  *See* Cal. Comm. Code § 2207(3).  There is certainly nothing in the Subsequent Purchase Orders to support Plaintiffs' contention that they have a contractual entitlement to $2 million worth of sales (as opposed to the roughly $1 million in sales actually reflected in the Subsequent Purchase Orders).  Nor, of course, is there any provision in the UCC that Plaintiffs have cited (or can cite) that somehow "guarantees" them exactly $2 million worth of sales.

1    Because Section 2207(3) is inapplicable (and unavailing to Plaintiffs), and

2    because Plaintiffs failed to address Kissler's arguments outlining the Complaint's fatal

3    deficiencies under any common law implied contract theory, Plaintiffs' claim for

4    breach of implied contract should be dismissed without leave to amend.

5    **D.     Plaintiffs' Arguments Do Not Salvage Their Promissory Estoppel**

6    **Claim**

7    Plaintiffs' Opposition confirms that they have inadequately pled, and cannot

8    adequately plead, their claim for promissory estoppel.  The claim fails on all of the

9    elements: (1) clear promise; (2) reasonable reliance; (3) substantial detriment; and

10   (4) resulting damages.

11   Starting with the lack of clear promise: as Kissler demonstrated in the Motion,

12   the allegations that *actually appear* in the Complaint's promissory estoppel cause of

13   action are hopelessly vague and insufficient to support a "clear promise."  (*See* Motion,

14   pp. 17:24-19:17.)  Recognizing this, Plaintiffs now pivot away from those allegations,

15   arguing instead that they "have alleged a clear promise, which was expressed in the

16   purchase orders (Complaint, ¶ 14), as well as subsequent discussions and modified

17   purchase orders (Complaint, ¶ 15)."  (Opp., p. 20:14-16.)  Paragraph 14 of the

18   Complaint, of course, references the December 17, 2021 Purchase Orders, whereas

19   Paragraph 15 references the Subsequent Purchase Orders.[4]  As discussed above,

20   however, the December 17, 2021 Purchase Orders were repudiated the very same day

21   they were issued (and were explicitly "cancelled" six days later, as confirmed in

22   writing by both parties), and there is no dispute that Kissler fully performed under the

23   Subsequent Purchase Orders.  As such, there is no "clear promise" to support

24   Plaintiffs' promissory estoppel claim, and the claim fails on that basis, alone.

25

26

27   ─────────────

28   [4] The Complaint, however, erroneously alleges that purchase order no. 10127 was
     issued on April 13, 2022.  (*See* Compl., ¶ 15.)  In fact, that purchase order was issued
     much earlier, on December 23, 2021.  (*See* Kissler Decl., Ex. C.)

1    Turning to the element of reasonable reliance:  Plaintiffs argue that they "have

2    alleged that they reasonably relied on Defendant's commitment to their substantial

3    detriment—Mr. He formed a new company to fulfill Kissler's orders and entered into

4    agreements with manufacturers who created tooling needed to fabricate the goods."

5    (Opp., p. 20:16-19.)  As detailed in Kissler's Motion—but wholly ignored in Plaintiffs'

6    Opposition—any such alleged actions cannot possibly have been undertaken in

7    reliance (let alone *reasonable* reliance) upon the December 17, 2021 Purchase Orders

8    given, among other things, the **timing** of such actions.  As Plaintiffs admit in their

9    Complaint, Mr. He did not even form this new company (*i.e.* Park 2580) until some

10   time in **January 2022**.  (*See* Compl., ¶ 16 ("Mr. He formed Park 2580 in January 2022

11   for the purpose of transacting business with Kissler"); *see also* Compl., ¶¶ 17-18

12   (alleging Park 2580 entered into contracts and made arrangements with a Chinese

13   manufacturer "to fabricate the universal trim kit products Kissler ordered").  Indeed, as

14   a matter of judicial notice, Park 2580 did not exist until January 26, 2022.  (*See* RJN,

15   Ex. A.)  As such, these acts of alleged "reliance" on the December 17, 2021 Purchase

16   Orders did not even *begin* until more than one full month *after* the parties had

17   explicitly "cancelled," in writing, the December 17, 2021 Purchase Orders.  There is

18   thus no plausible (or even possible) way that Park 2580 could have "relied" on the

19   December 17, 2021 Purchase Orders, let alone *reasonably* relied on them.  In their

20   Opposition, Plaintiffs do not even attempt to address this fatal deficiency.

21        As noted in the Motion, what Plaintiffs are labeling as "reliance" was, *at best*, a

22   "mere hopeful expectation [that] cannot be equated with the necessary justifiable

23   reliance." *Weinstein v. Meritor, Inc*., No. 2:16-CV-01076, 2017 WL 4397947, at *3

24   (D. Nev. Sept. 29, 2017) (holding mere discussions and negotiations surrounding

25   potential purchase orders lacks the requirements of a clear and definite promise).

26        Plaintiffs also fail to allege facts demonstrating substantial detriment.  Plaintiffs

27   simply state in conclusory fashion that because "Mr. He formed a new company to

28   fulfill Kissler's orders for trim kits and entered into agreements with manufacturers

17

who created tooling needed to fabricate the goods[,]" this was a substantial detriment. (Opp., p. 20:17-19.)  Plaintiffs simply gloss over the fact that such actions were necessary in light of Kissler's Subsequent Purchase Orders and make no effort to explain why the formation of a new company, or entering into agreements with manufacturers, was a substantial detriment in light of these other orders.  The only plausible explanation for why Plaintiffs fail to make such allegations is because there were in fact no additional costs that Plaintiffs incurred, supposedly in "reliance" on the December 17, 2021 Purchase Orders, as compared to the Subsequent Purchase Orders.

Further, to support their contention of resulting damages, Plaintiffs direct the Court to paragraph 19 of its Complaint.  (Opp., p. 20:19-21.)  However, paragraph 19 only alleges "damages arising from Kissler's breach of its *contractual* obligations." (Compl. ¶ 19 (emphasis added).)  Thus, it does not follow that Plaintiffs have alleged resulting damages for its promissory estoppel claim.

Finally, as detailed in the Motion (*see* § IV.C.i), separate and apart from the foregoing deficiencies (each of which, alone, precludes Plaintiffs' promissory estoppel claim), the fact remains that promissory estoppel is a doctrine restricted to *unilateral* promises—it is simply not available where, as here, the alleged promise is tethered to performance *by the alleged promisee.  See, e.g., Healy v. Brewster,* 59 Cal. 2d 455, 463 (1963) ("The doctrine of promissory estoppel is inapplicable where the promisee's performance was requested by the promisor at the time the promise was made."); *Youngman v. Nevada Irr. Dist.*, 70 Cal. 2d 240, 250 (1969) ("[W]here the promisee's reliance was bargained for, the law of consideration applies; and it is only where the reliance was unbargained for that there is room for application of the doctrine of promissory estoppel.").  In their Opposition, Plaintiffs misconstrue this point, arguing that Kissler's position on promissory estoppel "cannot be reconciled" with Kissler's contention that Plaintiffs have failed to plead a claim for breach of contract, and further arguing that they are entitled to plead inconsistent legal claims in the alternative. Kissler does not dispute that, as a general matter, a party may plead inconsistent legal

18

theories.  Here however, by definition, any alleged "reliance" on the December 17, 2021 Purchase Orders would have been in the context of a contemplated mutual exchange—*i.e.,* money for goods—not a unilateral promise.  As such, the doctrine of promissory estoppel is simply inapplicable, *regardless* of whether Plaintiffs can or cannot allege a viable contract claim.  *See id.*  In any event, as detailed above and in the Motion, the Complaint does not and cannot adequately plead any (let alone all) of the elements of a promissory estoppel claim.

### III.  CONCLUSION

Because each of Plaintiffs' claims is inadequately alleged, and incapable of being cured through amendment, Kissler respectfully requests the Court grant its motion and dismiss Plaintiffs' claims for (1) breach of contract; (2) breach of implied contract; and (3) promissory estoppel, without leave to amend, and with prejudice.

Dated:  February 16, 2024

Respectfully submitted,

K&L GATES LLP

By /s/ *Kevin G. Sullivan*
Ronie M. Schmelz
Kevin S. Asfour
Kevin G. Sullivan

*Attorneys for Defendant*
KISSLER AND CO. INC.

1

## **<u>CERTIFICATE OF COMPLIANCE WITH L.R. 11-6.1</u>**

2          The undersigned, counsel of record for Defendant certifies that this brief

3   contains 6,146 words, which complies with the word limit of L.R. 11-6.1.

4

5

6                                   **K&L GATES LLP**

7   Dated:  February 16, 2024          By:    */s/ Kevin G. Sullivan* _____
                                              Kevin G. Sullivan
8

9                                            *Attorneys for Defendant*
                                             *KISSLER AND CO. INC.*
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

REPLY IN SUPPORT OF KISSLER'S MOTION TO DISMISS