Geoff Stover (SBN 211715)
AXS Law Group LA, LLP
6080 Center Drive, Suite 210
Los Angeles, California 90045
Telephone: (310) 746-5300
Email: geoff@axslawgroup.com

Hua Chen (SBN 241831)
ScienBiziP, P.C.
550 S. Hope Street, Suite 2825
Los Angeles, California 90071
Telephone: (213) 426-1771
Facsimile: (213) 426-1788
Email: huachen@scienbizippc.com

Attorneys for Plaintiffs
SHLA Group, Inc. and Park 2580, Inc.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SHLA Group, Inc., PARK 2580, Inc., <br><br> Plaintiffs, <br> v. <br> KISSLER & CO., Inc, <br><br> Defendant. | Case No. 23-cv-7567 <br><br> FIRST AMENDED COMPLAINT FOR: <br><br> (1) DECLARATORY RELIEF <br> (2) BREACH OF CONTRACT <br> (3) PROMISSORY ESTOPPEL |

1

Plaintiffs, by and through their attorneys, file this First Amended Complaint against Defendant Kissler & Co, Inc. and in support thereof allege as follows:

## THE PARTIES

1. Plaintiff SHLA Group, Inc.("SHLA") is a corporation having its principal place of business located in Torrance, California.

2. Plaintiff Park 2580, Inc. ("Park 2580") is a corporation having its principal place of business located in Torrance, California.

3. Upon information and belief, Defendant Kissler & Co., Inc. ("Defendant" or "Kissler") is a New Jersey corporation with its principal place of business in Carlstadt, New Jersey.

## JURISDICTION AND VENUE

4. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §1332 as the matter is between citizens of different states and the matter in controversy in this action exceeds the sum or value of $75,000, exclusive of interest and costs. This Court also has subject matter jurisdiction pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202.

5. This Court has personal jurisdiction over Defendant because, on information and belief, Defendant regularly transacts business in this District, has derived substantial revenue from goods offered for sale and/or sold in this District, and has established sufficient minimum contacts with the State of California such

that it is subject to the personal jurisdiction of this Court. Personal jurisdiction in California over Defendant is also consistent with the requirements of due process.

6. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to the causes of action set forth in this Complaint occurred in this District, and a substantial amount of the merchandise that is the subject of this action is located in this District.

## STATEMENT OF FACTS

7. Kissler is a manufacturer and distributor of plumbing repair parts and other plumbing goods. Kissler sells products to retail stores such as Home Depot. Kissler is a family-owned business that was founded about 100 years ago. Kissler has decades of experience in manufacturing and distributing plumbing goods. Kissler has decades of experience in outsourcing the manufacture of plumbing goods to overseas suppliers.

8. Kissler submitted bids to Home Depot for supply contracts regarding certain plumbing repair parts and other plumbing goods in February 2020. Home Depot later awarded Kissler contracts for certain plumbing products. One awarded business relates to universal trim kits for bathtub and shower faucets to be sold under the Home Depot Everbilt brand.

9. As early as 2020, Kissler approached Mr. Gang He., CEO of SHLA, to discuss sourcing and procurement to fulfill Home Depot's orders in the event that

Kissler's bidding was successful, including requirements for universal trim kits for repairing the Moen and Delta branded bathtub and shower faucets (the "Universal Trim Kit Products").

10. In early March 2021, Mr. Glenn Kissler requested via email to SHLA that Mr. He provide price quotes for the Universal Trim Kit Products. Mr. Kissler's requests identified each universal trim kit product by its Home Depot product number as well as the matching Kissler product number. Mr. Glenn stated that he needed the price quotes so that Kissler could present its quote to Home Depot.

11. On July 7, 2021, Mr. Glenn Kissler informed Mr. He that Kissler had won some Home Depot business and identified about a dozen plumbing parts for sourcing from SHLA.

12. The July 7, 2021 email initiated further negotiations between Mr. Glenn Kissler and Mr. He on the terms and conditions of the transactions between Kissler and SHLA including payment terms, product packaging requirements, initial order volume, shipment frequencies, annual volume demands by Home Depot, and a need for price "lock down."

13. The parties reached an agreement on locked down pricing in late July. Around the same time, Kissler also promised to source Home Depot's demands of the Universal Trim Kit Products for the next two years exclusively from SHLA. In subsequent communications, the parties continued to discuss Home Depot's annual

volume demands for the Universal Trim Kit Products. The parties also discussed product packaging solutions, arrangement for product audit and certification by Home Depot, product lead time, and additional requirements to ready the products for launch at Home Depot.

14. Eventually, Kissler issued three purchase orders to SHLA consisting of PO10099, PO10106, and PO10107, all of which bear the digital signature of Mr. Jeffrey Kissler. The purchase orders use standard Kissler forms. They are dated December 17, 2021. They specify six universal trim kit products which are identified by their respective Kissler Part Nos, the quantities for each product, estimated shipping date, the unit price for each product, and the total amount due. They also set forth the payment terms. SHLA is the listed vendor. The three orders combined total over USD $2 million worth of an aggregate of more than 200,000 pieces of the Universal Trim Kit Products.

15. Mr. Jeffrey Kissler later requested that Mr. He "hold off" on these P.O.s. A few days later, Mr. Kissler sent another "opening order" labeled as PO10127. With respect to PO10099, PO10106, and PO10107, Mr. Kissler explained that he wanted to "cancel" them as he can "always re-write." Based on industry custom, Mr. He understood Kissler's requests to "hold off" or "cancel" a P.O. to mean that there was a need to adjust product shipment schedule to conform to Home Depot's product launch and store deployment planning, and that Kissler would

reissue purchase orders after the new shipment date(s) was confirmed. In other words, Mr. Kissler's statements *did not* mean that Kissler was cancelling its order for the products but rather was simply delaying the timeline for shipment and receipt of the products to meet the needs of Kissler's customer.

16. On or about mid-December 2021, Mr. Jeffrey Kissler also exchanged further emails with Mr. He where Mr. Kissler asked product lead time and stated that a lead time by January 15th would be "very ideal."

17. In late December 2021, SHLA urged its Chinese supplier to start production based on Kissler's various representations regarding Home Depot's annual volume demands for the Universal Trim Kit Products, its promise to source the products exclusively from SHLA, and the quantities set forth in Kissler's purchase orders numbered PO10099, PO10106, and PO10107. SHLA's instruction to the Chinese supplier also considered the lead time for manufacturing and overseas shipping.

18. Mr. He formed Park 2580 in January 2022 for the purpose of transacting businesses with Kissler with respect to plumbing products, and to separate them from the businesses of SHLA.

19. Park 2580 executed sales contracts in January 2022 with the Chinese supplier to secure supply of the Universal Trim Kit Products that Kissler ordered. In reliance of Kissler's various representations regarding Home Depot's annual volume

demands for the Universal Trim Kit Products, its promise to source the products exclusively from SHLA, and the quantities set forth in Kissler's purchase orders numbered PO10099, PO10106, and PO10107, Park 2580 arranged for the Chinese supplier to invest and build all the tooling needed to manufacture the products. Park 2580 also arranged for all the requested quantities fabricated to fulfill Kissler's purchase orders numbered PO10099, PO10106, and PO10107.

20. On or about March 14, 2022, Mr. He requested via email that Mr. Jeffrey Kissler start issuing purchase orders to Park 2580 Inc. instead of SHLA Group. Mr. Kissler complied. After a few rounds of adjustments and corrections, three revised purchase orders were issued to Park 2580 on or about April 13, 2024. They consist of PO10127, PO10363, and PO10397. These revised purchase orders cover universal trim kits for the Moen, Delta and Valley brand bathtub and shower faucets. The three orders combined total over USD $1 million worth of an aggregate of slightly less than 100,000 pieces of the plumbing parts.

21. Kissler received and paid for the goods delivered pursuant to PO10127, PO10363, and PO10397, which were delivered at various times in the year 2022. Kissler has not issued any additional purchase orders to either SHLA or Park 2580. Kissler has refused to issue additional orders to receive the balance of the goods fabricated according to Kissler's purchase orders numbered PO10099, PO10106, and PO10107. Consequently, Park 2580 is liable to its Chinese supplier for the

inventory that should have been delivered and paid but for Kissler's failure to take delivery.

## **THE DANCO DISPUTE**

22. Mr. He was informed in late 2022 that the Universal Trim Kit Products that Kissler purchased from SHLA and/or Park 2580 may have patent issues vis-à-vis Danco's U.S. Patent No. 9,051,720 (the "'720 Patent"). The parties discussed how to handle the patent issues. During such discussions, Mr. He explained to Kissler that neither SHLA nor Park 2580 had any prior knowledge of the '720 Patent. Neither SHLG nor Park 2580 has received notice from Danco about the '720 Patent.

23. Unbeknownst to Plaintiffs at the time, Danco, Inc. filed a patent infringement lawsuit against Kissler on April 19, 2023 in the United States District Court for the District of New Jersey, alleging, inter alia, that the "Everbilt Tub & Shower Trim Kit for Moen®" and "Everbilt Tub & Shower Trim Kit for Delta®" Kissler supplied to Home Depot infringed the '720 Patent. The case number is 2:23-cv-2192.

24. Kissler did not inform Mr. He of the pending lawsuit until June 20, 2023. Kissler then made a written request that SHLA, Mr. He, or Park 2580 make monetary contribution to resolve the lawsuit.

25. Upon information and belief, and unbeknownst to Plaintiffs at the time, Danco and Kissler settled the patent lawsuit in or about July 2023. The case was

dismissed on or about July 19, 2023. To this date, Plaintiffs do not know the terms of the settlement. Mr. He, SHLA, or Park 2580 were not consulted or invited to participate in the resolution of Danco's patent lawsuit. Neither Mr. He, nor SHLA, or Park 2580 provided consent to the settlement.

26. By letter dated July 26, 2023, counsel for Kissler demanded that SHLA, Mr. He, and/or Park 2580 reimburse damages and fees incurred by Kissler in connection with the Danco lawsuit (the "Kissler Indemnification Demand"). The July 26, 2023 letter is attached hereto as Exhibit 1.

27. By letter dated August 22, 2023, counsel for Mr. He and the Plaintiffs sought clarification regarding, inter alia, the legal and factual basis of the Kissler Indemnification Demand. The August 22, 2023 letter is attached hereto as Exhibit 2.

28. By letter dated September 1, 2023, Kissler's counsel acknowledged that the parties had not entered into a formal written agreement other than the purchase orders. Notwithstanding that there was no contractual indemnity obligation, Kissler nonetheless maintained that Plaintiffs and Mr. He had an obligation to reimburse Kissler. The September 1, 2023 correspondence includes a draft complaint against SHLA, Mr. He, and Park 2580. The draft complaint asserts six causes of action – breach of contract, detrimental reliance, negligent representation, intentional misrepresentation of saleable products, breach of duty of good faith and fair dealing,

and fraud. Specifically, Kissler asserts Plaintiffs breached an express or implied agreement between Kissler and the Plaintiffs. A copy of the September 1, 2023 letter is attached hereto as Exhibit 3.

## FIRST CAUSE OF ACTION
### (For Declaratory Relief)

29. Plaintiffs reallege and reincorporate by reference herein each and every allegation of each preceding Paragraph as if set forth fully herein.

30. A real and actual controversy exists between the parties relating to their legal rights and duties with respect to the allegedly express or implied agreements between them. A judicial declaration of the parties' legal rights and duties is proper at this time as to Plaintiffs' obligations regarding the Danco lawsuit, including the defense costs and/or the settlement (to which Plaintiffs did not consent).

31. A judicial declaration is necessary and appropriate at this time under the circumstances in order for Plaintiffs to ascertain their rights and Defendant's duties.

32. Plaintiffs respectfully request that the Court enter judgment in their favor and against Defendant providing an appropriate judicial declaration consistent with the relief prayed for by Plaintiffs herein.

///
///
///

10

## SECOND CAUSE OF ACTION

## (Breach of Contract)

33. Plaintiffs reallege and reincorporate by reference herein each and every allegation of each preceding Paragraph as if set forth fully herein.

34. SHLA and Kissler formed a contract by December 2021 where Kissler agreed to purchase over $2 million worth of goods covering more than 200,000 pieces of the Universal Trim Kit Products. The terms of the contract are set forth in the purchase orders Kissler placed with SHLA and the various communications between Mr. He, on the one hand, and Messrs. Glenn Kissler or Jeffrey Kissler, on the other hand. Specifically, the parties agreed to lock down the unit price for each Universal Trim Kit Product. The parties also reached an agreement for SHLA to exclusively supply goods to Kissler so that Kissler can meet Home Depot's annual volume demands of the Universal Trim Kit Products for at least two years. Kissler formalized the quantity requirements in the purchase orders dated December 17, 2021 consisting of PO10099, PO10106, and PO10107. Although Kissler later requested "hold[ing] off" and "cancel[lation]" of these orders, it is the industry custom not to interpret such instructions as revocation of the contract but needs for adjustment in delivery schedules to be reflected in subsequent purchase orders.

35. SHLA has caused Park 2580 to enter sales contracts with its Chinese supplier to secure the supply of the full quantity of the Universal Trim Kit Products

set forth in Kissler's purchase orders numbered PO10099, PO10106, and PO10107. During various times in 2022, the Chinese supplier delivered to Kissler products that would fulfill Kissler's revised PO10127, PO10363, and PO10397. SHLA, through Park 2580, has met its obligations under the contract between SHLA and Kissler except for the terms of the contract that have been excused.

36. Kissler breached the contract by failing to issue additional purchase orders to take shipment and pay for the balance of the products that were manufactured in accordance with the quantities set forth in Kissler's purchase orders numbered PO10099, PO10106, and PO10107.

37. SHLA has suffered damages due to Defendant's breach. The damages include but are not limited to amounts SHLA, through PARK 2580, owed to its Chinese supplier for the tooling cost, the non-delivered inventory and its storage costs. Such amounts exceed $75,000.

38. Based on the allegations in the preceding paragraphs, SHLA is a proper Plaintiff in this breach of contract cause of action because it formed an agreement with Kissler for the sale of goods to Kissler. Park 2580 is also a proper Plaintiff in this breach of contract cause of action because SHLA delegated the rights to contract formed between SHLA and Kissler to Park 2580, and Kissler was advised of such delegation. Furthermore, Park 2580 is a proper Plaintiff in this breach of contract

cause of action because it is Park 2580 who executed the sale contract with the Chinese supplier and injured by Kissler's breach of the contract.

### THIRD CAUSE OF ACTION
### (Promissory Estoppel)

39. Plaintiffs reallege and reincorporate by reference herein each and every allegation of each preceding Paragraph as if set forth fully herein.

40. Kissler promised SHLA that it would issue a series of purchase orders. Kissler also promised SHLA that it would source Home Depot's demands of the Universal Trim Kit Products for the next two years exclusively from SHLA.

41. SHLA relied on Kissler's promise and caused Park 2580 to enter into sales contracts with its Chinese supplier for more than 200,000 pieces of the Universal Trim Kit Products.

42. The Chinese supplier manufactured the more than 200,000 pieces of the Universal Trim Kit Products. The Chinese supplier also invested in the necessary tooling to manufacture the large quantities of the Universal Trim Kit Products Kissler promised to order, which cost were expected to be defrayed by the large order.

43. During various times in 2022, SHLA has caused Park 2580 to work with the Chinese supplier to deliver the products in accordance with Kissler's revised PO10127, PO10363, and PO10397. Kissler broke its promise by failing to issue

additional purchase orders to take shipment and pay for the balance of the products that were manufactured in accordance with the quantity terms set forth in Kissler's purchase orders numbered PO10099, PO10106, and PO10107.

44. SHLA's reliance on Kissler' promise is reasonable and foreseeable. Kissler provided SHLA various accounts of Home Depot's annual volume demands for the Universal Trim Kit Products. Kissler bargained for and obtained locked down pricing for the Universal Trim Kit Products. SHLA had reason to believe that Home Depot's annual volume demands for the years 2022-2023 would exceed the aggregate quantity set forth in Kissler's purchase orders numbered PO10099, PO10106, and PO10107. SHLA was under the further impression that Kissler required urgent delivery. SHLA was therefore justified in causing Park 2580 to place a sales contract to order the total quantity set forth in Kissler's purchase orders numbered PO10099, PO10106, and PO10107. Furthermore, it is foreseeable that the Chinese supplier had the more than 200,000 pieces of the Universal Trim Kit Products manufactured ahead of receiving confirmed delivery schedules from Kissler because of Kissler's promise to source exclusively from SHLA Home Depot's demands for the next two years and because of manufacture efficiency.

45. Because Kissler has not issued additional purchase orders to receive the balance of the total quantity set forth in Kissler's purchase orders numbered PO10099, PO10106, and PO10107, SHLA suffered damages as the result of its

reliance on Kissler's promises.  The damages include but are not limited to amounts SHLA, through PARK 2580, owed to its Chinese supplier for the tooling cost, the non-delivered inventory and its storage costs.  Such amounts exceed $75,000.

46. Based on the allegations in the preceding paragraphs, SHLA is a proper Plaintiff in this promissory estoppel cause of action because it received a clear and unambiguous promise from Kissler.  In reliance of the promise, it has caused Park 2580 to sign a sales contract with the Chinese supplier to purchase large quantities of goods.  The reliance is reasonable and foreseeable.  SHLA is injured by its reliance on Kissler's promise which Kissler failed to keep.

47. Based on the allegations in the preceding paragraphs, Park 2580 is also a proper Plaintiff in this promissory estoppel cause of action because it received a clear and unambiguous promise.  In reliance of the promise, Park 2580 signed a sales contract with the Chinese supplier to purchase large quantities of goods.  The reliance is reasonable and foreseeable.  Park 2580 is injured by its reliance on Kissler's promise which Kissler failed to keep.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs respectfully request the Court to enter judgment as follows:

A. For a judicial declaration that Plaintiffs do not owe Defendant any damages and fees incurred by Defendant in connection with the Danco lawsuit.

B. For a judicial declaration that Defendant is obligated to comply with all purchase orders already made in agreement with Plaintiffs.

C. Damages according to proof;

D. That the Court award Plaintiffs pre-judgment interest;

E. That Defendants be required to pay to Plaintiffs their costs in this action, including all costs and attorney's fees; and

F. For such other and further relief as the court deems just and proper.

DATED: May 31, 2024                    Respectfully,

                                       HUA CHEN
                                       SCIENBIZIP, P.C.

                                       By: _____*/s/ Hua Chen*_____
                                                Hua Chen

                                       Geoff Stover
                                       AXS Law Group LA, LLP

                                       Attorneys for Plaintiffs
                                       SHLA Group, Inc., Park 2580, Inc.