**K&L GATES LLP**
Ronie Schmelz (State Bar No. 130798)
ronie.schmelz@klgates.com
(310) 552-5002
Kevin S. Asfour (State Bar No. 228993)
kevin.asfour@klgates.com
(310) 552-5016
Lauren E. Elvick (State Bar No. 348619)
lauren.elvick@klgates.com
(310) 552-5049
10100 Santa Monica Blvd.
Floor 8
Los Angeles, CA 90067

Attorneys for Defendant and
Counterclaimant KISSLER AND CO.
INC.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| SHLA GROUP INC., PARK 2580, INC., <br><br> Plaintiffs, <br><br> v. <br><br> KISSLER AND CO. INC., <br><br> Defendant. | Case No. 2:23-cv-07567-TJH-BFM <br><br> [Hon. Judge Terry J. Hatter, Jr.] <br><br> **DEFENDANT AND COUNTERCLAIMANT KISSLER AND CO. INC'S ANSWER TO FIRST AMENDED COMPLAINT, AFFIRMATIVE DEFENSES AND COUNTERCLAIMS** <br><br> [DEMAND FOR JURY TRIAL] |
| KISSLER AND CO. INC., <br><br> Counterclaimant, <br><br> v. <br><br> SHLA GROUP INC., PARK 2580, INC. and GANG HE, <br><br> Counterclaim Defendants. | |

509147992.2

Pursuant to Rules 7, 8, 13, 19 and 20 of the Federal Rules of Civil Procedure, Defendant and Counterclaimant Kissler and Co. Inc ("Kissler") hereby answers and asserts its affirmative defenses in response to the First Amended Complaint ("FAC") of Plaintiffs SHLA Group Inc. ("SHLA") and Park 2580, Inc. ("Park 2580") and, further, asserts its counterclaims against Counterclaim Defendants SHLA, Park 2580 and Gang He.

**ANSWER**

The paragraph numbers of Kissler's responses set forth below correspond to the paragraph numbering of the FAC.  In so responding, Kissler only answers those portions of the FAC that survived the Court's partial dismissal of the FAC on March 3, 2025 (*see* Dkt. #34).  Pursuant to Rule 8(b)(3) of the Federal Rules of Civil Procedure, Kissler hereby denies all allegations of the FAC except those specifically admitted below.  Kissler's investigation and discovery regarding the facts alleged in the FAC are ongoing, and Kissler reserves the right to amend or supplement this Answer and Affirmative Defenses.

1.    Kissler is informed and believes that SHLA Group, Inc. is a corporation. As to the remainder of this paragraph's allegations, Kissler lacks knowledge or information sufficient to form a belief about their truth.

2.    Kissler is informed and believes that Park 2580, Inc. is a corporation.  As to the remainder of this paragraph's allegations, Kissler lacks knowledge or information sufficient to form a belief about their truth.

3.    Admitted.

4.    The allegations in this paragraph constitute legal conclusions rather than factual averments, and thus Kissler is not required to answer.  Without waiver of the foregoing contention, and reserving all such rights: to the extent a response is deemed necessary, Kissler admits that the Court has subject matter jurisdiction over this action.

5.     The allegations in this paragraph constitute legal conclusions rather than factual averments, and thus Kissler is not required to answer.  Without waiver of the foregoing contention, and reserving all such rights: to the extent a response is deemed necessary, Kissler admits only that it has voluntarily submitted to the jurisdiction of this Court in connection with this action, only, and otherwise denies the allegations.

6.     The allegations in this paragraph constitute legal conclusions rather than factual averments, and thus Kissler is not required to answer.  Without waiver of the foregoing contention, and reserving all such rights: to the extent a response is deemed necessary, Kissler admits that Venue is proper in this District.

7.     Admitted.

8.     The allegations in this paragraph are vague, ambiguous and uncertain. Kissler admits only that it submitted bids to Home Depot for certain business and subsequently sold certain products to Home Depot, and otherwise denies the allegations in this paragraph.

9.     Kissler denies that it approached Mr. Gang He, but admits that Kissler and Mr. Gang He had discussions regarding the possibility of selling products to Home Depot.

10.     Kissler admits only that emails were exchanged between the parties in and around March 2021, which documents speak for themselves.  To the extent a further response to the allegations in this paragraph is deemed necessary, Kissler denies the remainder of the allegations.

11.     Kissler admits only that the parties engaged in email correspondence on or about July 7, 2021, which documents speak for themselves.  To the extent a further response to the allegations in this paragraph is deemed necessary, Kissler denies the remainder of the allegations.

12.     Kissler admits only that the parties engaged in email correspondence on or about July 7, 2021, which documents speak for themselves.  To the extent a further

ANSWER, AFFIRMATIVE DEFENSES AND COUNTERCLAIMS

response to the allegations in this paragraph is deemed necessary, Kissler denies the remainder of the allegations.

13.     Kissler admits only that the parties engaged in email correspondence in or about July 2021, which documents speak for themselves.  To the extent a further response to the allegations in this paragraph is deemed necessary, Kissler denies the remainder of the allegations.

14.     Kissler admits only that on December 17, 2021 it issued three purchase orders numbered PO10099, PO10106, and PO10107, which Plaintiffs rejected in writing on that same day, and which the parties thereafter confirmed were cancelled in writing on that same day.  The (rejected and cancelled) purchase orders and the surrounding correspondence speak for themselves.  To the extent a further response to the allegations in this paragraph is deemed necessary, Kissler denies the remainder of the allegations.

15.     Kissler admits only that the parties engaged in correspondence on and after December 17, 2021 regarding the purchase orders numbered PO10099, PO10106, and PO10107, which Plaintiffs rejected in writing on that same day, and which the parties thereafter confirmed were cancelled in writing on that same day.  Said correspondence speaks for itself.  Kissler denies all other allegations in this paragraph.

16.     Kissler admits only that the parties engaged in email correspondence in December 2021, which documents speak for themselves.  To the extent a further response to the allegations in this paragraph is deemed necessary, Kissler denies the remainder of the allegations.

17.     Kissler was not a party to any alleged communications SHLA may have had with any Chinese supplier and lacks knowledge or information sufficient to form a belief about the truth of such allegations, and denies them on that basis.  Moreover, Kissler categorically denies that SHLA could possibly have relied upon the purchase orders numbered PO10099, PO10106, and PO10107, which Plaintiffs rejected in writing on the same day they were issued, and which the parties thereafter confirmed

were cancelled in writing on that same day.  To the extent a further response to the allegations in this paragraph is deemed necessary, Kissler denies the remainder of the allegations.

18.    Kissler lacks knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph.

19.    Kissler was not a party to any alleged communications or transactions Park 2580 may have had with any Chinese supplier and lacks knowledge or information sufficient to form a belief about the truth of such allegations, and denies them on that basis.  Moreover, Kissler categorically denies that Park 2580 could possibly have relied upon the purchase orders numbered PO10099, PO10106, and PO10107, which Plaintiffs rejected in writing on the same day they were issued, and which the parties thereafter confirmed were cancelled in writing on that same day—all of which occurred before Park 2580 even existed.  To the extent a further response to the allegations in this paragraph is deemed necessary, Kissler denies the remainder of the allegations.

20.    Kissler admits only that it engaged in email correspondence with Mr. He in March 2022, and that it issued purchase orders in that same timeframe, all of which documents speak for themselves.

21.    Kissler admits only that it paid for all goods that were delivered pursuant to its purchase orders, and denies all other allegations in this paragraph.

22.    The allegations in the first sentence of this paragraph are vague, ambiguous and uncertain, and in any event Kissler lacks knowledge or information sufficient to form a belief about their truth and denies them on that basis.  Kissler admits only that it has demanded indemnity from Plaintiffs due to their sale of products to Kissler that were covered by patents held by Danco, Inc., and that Plaintiffs have consistently failed and refused to indemnify Kissler.  Kissler denies all other allegations in this paragraph.

23.    Kissler admits only that Danco, Inc. filed a lawsuit against Kissler on or about April 19, 2023 in the U.S. District Court for the District of New Jersey, Case No. 2:23-cv-02192-SDW-CLW.  The pleadings filed in that lawsuit speak for themselves. To the extent a further response to the allegations in this paragraph is deemed necessary, Kissler denies the remainder of the allegations.

24.    Kissler admits only that it has demanded indemnity from Plaintiffs for Danco, Inc.'s claims, and that Plaintiffs have consistently failed and refused to indemnify Kissler.  Kissler denies all other allegations in this paragraph.

25.    Kissler admits that it settled Danco, Inc.'s lawsuit against it in or about July 2023 and that the lawsuit was thereafter dismissed as reflected on the subject court's docket.  Kissler denies all other allegations in this paragraph.

26.    Kissler admits only that its counsel sent a letter to Plaintiffs dated July 26, 2023, which speaks for itself.  To the extent a further response to the allegations in this paragraph is deemed necessary, Kissler denies the remainder of the allegations.

27.    Kissler admits only that its counsel received a letter from Plaintiffs' counsel dated August 22, 2023, which speaks for itself.  To the extent a further response to the allegations in this paragraph is deemed necessary, Kissler denies the remainder of the allegations.

28.    Kissler admits only that its counsel sent a letter to Plaintiffs' counsel dated September 1, 2023, which speaks for itself.  To the extent a further response to the allegations in this paragraph is deemed necessary, Kissler denies the remainder of the allegations.

29.    Kissler realleges and incorporates herein by reference its responses to the preceding paragraphs.

30.    Kissler admits that there is a real and actual controversy between Kissler and Plaintiffs relating to Danco, Inc.'s claims and lawsuit against Kissler and Plaintiffs' obligations to Kissler regarding same.  Kissler further admits that a judicial declaration of the parties' legal rights and duties is proper regarding such matters,

including without limitation Kissler's defense fees and costs, amounts paid to Danco, Inc., and other damages.  Kissler denies the remainder of this paragraph's allegations.

31.    Kissler admits that a judicial declaration is appropriate but denies that Plaintiffs are unable to ascertain their obligations in its absence.

32.    The allegations in this paragraph constitute a prayer for relief, rather than factual averments, and thus Kissler is not required to answer.  To the extent a response is required, Kissler denies that Plaintiffs are entitled to the relief they have requested or any judgment in their favor.

33.    Kissler realleges and incorporates herein by reference its responses to the preceding paragraphs.

34.    Denied.

35.    Denied.

36.    Denied.

37.    Denied.

38.    Denied.

39.    The Court has dismissed this claim (*see* Dkt. #34) and thus Kissler need not and does not answer the allegations of this paragraph.

40.    The Court has dismissed this claim (*see* Dkt. #34) and thus Kissler need not and does not answer the allegations of this paragraph.

41.    The Court has dismissed this claim (*see* Dkt. #34) and thus Kissler need not and does not answer the allegations of this paragraph.

42.    The Court has dismissed this claim (*see* Dkt. #34) and thus Kissler need not and does not answer the allegations of this paragraph.

43.    The Court has dismissed this claim (*see* Dkt. #34) and thus Kissler need not and does not answer the allegations of this paragraph.

44.    The Court has dismissed this claim (*see* Dkt. #34) and thus Kissler need not and does not answer the allegations of this paragraph.

ANSWER, AFFIRMATIVE DEFENSES AND COUNTERCLAIMS

45.    The Court has dismissed this claim (*see* Dkt. #34) and thus Kissler need not and does not answer the allegations of this paragraph.

46.    The Court has dismissed this claim (*see* Dkt. #34) and thus Kissler need not and does not answer the allegations of this paragraph.

47.    The Court has dismissed this claim (*see* Dkt. #34) and thus Kissler need not and does not answer the allegations of this paragraph.

Plaintiffs' prayer for relief is a request rather than a factual averment, and thus Kissler is not required to answer it.  To the extent a response is required, Kissler denies that Plaintiffs are entitled to the relief they have requested or any judgment in their favor.

## AFFIRMATIVE DEFENSES

Kissler asserts the following affirmative defenses on information and belief.  In so doing, Kissler does not assume any burden of pleading, proof, persuasion, or production on such defenses where such burden would otherwise fall on Plaintiffs. Additionally, Kissler's affirmative defenses are asserted in the alternative, and none of them constitute an admission of liability or that any of Plaintiffs are entitled to any relief.

### FIRST AFFIRMATIVE DEFENSE

### (Failure to State a Claim)

As a separate and independent affirmative defense to the FAC and each purported cause of action therein, Kissler alleges that each of Plaintiffs has failed to state a claim upon which relief may be granted.

### SECOND AFFIRMATIVE DEFENSE

### (Lack of Standing Under Article III)

As a separate and independent affirmative defense to the FAC and each purported cause of action therein, Kissler alleges that each of Plaintiffs lacks standing under Article III of the United States Constitution because, *inter alia*, they have not

suffered (i) injury in fact, (ii) that is fairly traceable to the conduct of Kissler, and (iii) that is likely to be redressed by judicial action.

THIRD AFFIRMATIVE DEFENSE

(Statute of Frauds)

As a separate and independent affirmative defense to the FAC and each purported cause of action therein, Kissler alleges that the purported contract alleged in paragraph 34 of the FAC is barred by the Statute of Frauds.

FOURTH AFFIRMATIVE DEFENSE

(Plaintiffs' Rejection of Offer)

As a separate and independent affirmative defense to the FAC and each purported cause of action therein, Kissler alleges that Plaintiffs' claims are barred because Plaintiffs rejected the purchase orders numbered PO10099, PO10106, and PO10107 and asked that they be rewritten with different material terms, making clear that Plaintiffs' acceptance was conditioned on such additional terms.

FIFTH AFFIRMATIVE DEFENSE

(Mutual Termination)

As a separate and independent affirmative defense to the FAC and each purported cause of action therein, Kissler alleges that Plaintiffs' claims are barred because the parties agreed that the purchase orders numbered PO10099, PO10106, and PO10107 were cancelled and inoperative on the same day they were issued.

SIXTH AFFIRMATIVE DEFENSE

(Novation)

As a separate and independent affirmative defense to the FAC and each purported cause of action therein, Kissler alleges that Plaintiffs' claims are barred because even if *arguendo* the purported contract alleged in paragraph 34 of the FAC was initially formed (which Kissler denies), the parties nonetheless supplanted that purported contract by novation.

ANSWER, AFFIRMATIVE DEFENSES AND COUNTERCLAIMS

## SEVENTH AFFIRMATIVE DEFENSE

### (Accord and Satisfaction)

As a separate and independent affirmative defense to the FAC and each purported cause of action therein, Kissler alleges that Plaintiffs' claims are barred because even if *arguendo* the purported contract alleged in paragraph 34 of the FAC was initially formed (which Kissler denies), the parties nonetheless supplanted that purported contract by accord and satisfaction.

## EIGHTH AFFIRMATIVE DEFENSE

### (Rescission)

As a separate and independent affirmative defense to the FAC and each purported cause of action therein, Kissler alleges that Plaintiffs' claims are barred because even if *arguendo* the purported contract alleged in paragraph 34 of the FAC was initially formed (which Kissler denies), the purported contract is subject to rescission on multiple, independent grounds including without limitation: (i) its procurement by connivance, misrepresentation, and concealment of material facts by Plaintiffs; (ii) the failure of the consideration to be provided by Plaintiffs thereunder due to, *inter alia*, the legal inability to sell or resell patented products; and (iii) the unlawful nature of the contract, unbeknownst to Kissler but known to Plaintiffs.

## NINTH AFFIRMATIVE DEFENSE

### (Performance Excused by Plaintiffs' Breach)

As a separate and independent affirmative defense to the FAC and each purported cause of action therein, Kissler alleges that Plaintiffs' claims are barred because even if *arguendo* the purported contract alleged in paragraph 34 of the FAC was initially formed (which Kissler denies), any performance thereunder by Kissler was excused by Plaintiffs' breaches of the purported contract, including, without limitation, Plaintiffs' provision of products that were not lawfully saleable, Plaintiffs' concealment of material facts, and Plaintiffs breaches of the purported contract's implied covenant of good faith and fair dealing.

## TENTH AFFIRMATIVE DEFENSE

### (Impossibility of Performance)

As a separate and independent affirmative defense to the FAC and each purported cause of action therein, Kissler alleges that Plaintiffs' claims are barred because even if *arguendo* the purported contract alleged in paragraph 34 of the FAC was initially formed (which Kissler denies), any performance thereunder by Kissler was excused because it would be unlawful to sell or resell patented products.

## ELEVENTH AFFIRMATIVE DEFENSE

### (Failure to Mitigate Damages)

As a separate and independent affirmative defense to the FAC and each purported cause of action therein, Kissler alleges that Plaintiffs' claims are barred because even if *arguendo* the purported contract alleged in paragraph 34 of the FAC was initially formed and even if *arguendo* Plaintiffs suffered damages resulting from any breach thereof (all of which Kissler denies), Plaintiffs may not recover for such damages because by their own acts and omissions, they have failed to properly mitigate such damages and/or have exacerbated such damages by their own conduct.

## TWELFTH AFFIRMATIVE DEFENSE

### (Estoppel)

As a separate and independent affirmative defense to the FAC and each purported cause of action therein, Kissler alleges each of Plaintiffs' claims are barred in whole or in part by the doctrine of estoppel.

## THIRTEENTH AFFIRMATIVE DEFENSE

### (Waiver)

As a separate and independent affirmative defense to the FAC and each purported cause of action therein, Kissler alleges each of Plaintiffs' claims are barred in whole or in part by the doctrine of waiver.

ANSWER, AFFIRMATIVE DEFENSES AND COUNTERCLAIMS

## FOURTEENTH AFFIRMATIVE DEFENSE

### (Laches)

As a separate and independent affirmative defense to the FAC and each purported cause of action therein, Kissler alleges each of Plaintiffs' claims are barred in whole or in part by the equitable doctrine of laches.

## FIFTEENTH AFFIRMATIVE DEFENSE

### (Unclean Hands)

As a separate and independent affirmative defense to the FAC and each purported cause of action therein, Kissler alleges each of Plaintiffs' claims are barred in whole or in part by the doctrine of unclean hands.

## SIXTEENTH AFFIRMATIVE DEFENSE

### (Unjust Enrichment)

As a separate and independent affirmative defense to the FAC and each purported cause of action therein, Kissler alleges each of Plaintiffs' claims are barred in whole or in part because recovery thereon would result in unjust enrichment.

## SEVENTEENTH AFFIRMATIVE DEFENSE

### (Offset/Setoff)

As a separate and independent affirmative defense to the FAC and each purported cause of action therein, Kissler alleges that any recovery to which Plaintiffs might otherwise be entitled is barred, in whole or in part, by amounts owing to Kissler by Plaintiffs.

## ADDITIONAL AFFIRMATIVE DEFENSES

Kissler has insufficient information upon which to form a belief as to whether it may have additional unstated affirmative defenses. Discovery and investigation are ongoing and Kissler reserves the right to assert additional affirmative defenses.

# COUNTERCLAIMS

## The Parties

1.      Counterclaimant Kissler and Company, Inc. ("Kissler") is a New Jersey corporation with its principal place of business in Carlstadt, New Jersey.

2.      Upon information and belief, Kissler alleges that Counterclaim Defendant Gang He ("Mr. He") is an individual and resident of Torrance, California.

3.      Upon information and belief, Kissler alleges that Counterclaim Defendant SHLA Group, Inc. ("SHLA") is a California corporation with its principal place of business in Torrance, California.

4.      Upon information and belief, Kissler alleges that Counterclaim Defendant Park 2580 Inc. ("Park 2580") is a California corporation with its principal place of business in Torrance, California.

5.      Mr. He, SHLA and Park 2580 are sometimes referred to herein as Counterclaim Defendants.

6.      Upon information and belief, Kissler alleges that Mr. He is, and at all relevant times was, the owner, operator, proprietor, and an officer of both SHLA and Park 2580.

7.      Upon information and belief, Kissler alleges that the Counterclaim Defendants acted jointly, in concert, and with knowledge of the actions of each of the other Counterclaim Defendants; acted as the agent, servant, and representative of each of the other Counterclaim Defendants with respect to the actions complained of herein; acted at all times within the course and scope of said agency; are the successors or predecessors of one another; and/or were owners, principals, officers, directors, members, agents, partners, operators, parent companies, affiliates, and/or subsidiaries of one another; and/or that each is equally liable for the acts alleged below.

8.      Upon information and belief, Kissler alleges that there now exists, and at all relevant times herein there existed, a unity of interest and ownership between and among Counterclaim Defendants such that any individuality and separateness between

and among such Counterclaim Defendants have ceased to exist, and that Counterclaim Defendants are the alter egos of one another.

Jurisdiction and Venue

9.    This Court has subject matter jurisdiction over these counterclaims pursuant to 28 U.S.C. § 1332 because Kissler is a citizen only of New Jersey, none of Counterclaim Defendants is a citizen of New Jersey, and the amount in controversy exceeds $75,000.

10.    This Court additionally has supplemental subject matter jurisdiction over these counterclaims pursuant to 28 U.S.C. § 1367 because the Court has original jurisdiction over the claims that Plaintiffs asserted against Kissler in their First Amended Complaint and Kissler's counterclaims form part of the same case or controversy.

11.    Venue is proper in this district for Kissler's counterclaims because, inter alia, Plaintiffs' claims against Kissler are presently venued here and Kissler's counterclaims form part of the same case or controversy.

Facts Common to All Counterclaims

12.    Kissler is a manufacturer and distributor of plumbing repair parts.

13.    Counterclaim Defendants are manufacturers and distributors of plumbing repair parts.

14.    Upon information and belief, Kissler alleges that non-party Danco, Inc. ("Danco") is a manufacturer and distributor of plumbing repair parts.

15.    In or about June of 2020, Mr. He, on behalf of SHLA, contacted Kissler about the prospect of doing business together.  Mr. He made this outreach to Kissler at the suggestion of an SHLA employee, Kevin Mullins.  Prior to this initial outreach, Kissler had had no prior contact with Mr. He.

16.    Following Mr. He's outreach, the parties discussed the possibility of doing business together, and noted that both SHLA and Kissler were bidding for the opportunity to sell to Home Depot certain plumbing parts, including universal tub and

shower trim kits ("Plumbing Parts").  In the course of these discussions, Mr. He, on behalf of SHLA, offered to sell such Plumbing Parts to Kissler, with the understanding that Kissler, in turn, would resell the Plumbing Parts to Home Depot.

17.     Notably, in his introductory email, on or about June 10, 2020, Mr. Mullins stated to Kissler that Mr. He "was a major supplier to Danco for many years."  Mr. He, in turn, confirmed this assertion, specifically stating to Kissler in an email on or about June 10, 2020, "As Kevin introduced, we started to supply Danco around year 2003-2004. For most of their store items, we have toolings and can start production almost immediately."  Mr. He made these statements to demonstrate that he and SHLA were experienced and familiar with the production of the Plumbing Parts, and that he and SHLA were well-suited to supply such products to Kissler for sale to Home Depot.

18.     What Kissler did **not** know—and what Mr. He knew full-well, but concealed from Kissler—is that the Danco designs, toolings, and other related information in Mr. He's possession were subject to one or more patents held by Danco, and that Mr. He (and his companies) were forbidden from using such information to produce or sell the Plumbing Parts, both by patent law and, further, **by an express written agreement that Mr. He had personally signed with Danco some years beforehand, confirming Danco's patent rights**.

19.     Over the course of Mr. He's discussions with Kissler during mid-to-late 2021—and with Kissler completely unaware of the patent issues discussed above—Mr. He consistently represented to Kissler that Counterclaim Defendants were willing, able and well-suited to produce Plumbing Parts for Kissler to resell to Home Depot on a proper and lawful basis.  Kissler ultimately agreed to purchase Plumbing Parts from Counterclaim Defendants, based upon Mr. He's representations that he and his companies had the relevant experience and knowledge for the job, and were well-suited to provide Kissler with lawfully produced goods.  In this regard, Kissler did not provide the specifications for the Plumbing Parts to Counterclaim Defendants—rather,

Counterclaim Defendants obtained such specifications from Home Depot and/or already had such specifications in their possession.

20.    Initially, Mr. He instructed Kissler to direct its purchase orders to SHLA, but subsequently requested that the purchase orders instead be directed to a new entity Mr. He had formed, Park 2580. Kissler complied and, beginning in late 2021 and on into 2022, issued a series of purchase orders to Park 2580, numbered PO10127, PO10363, PO10397-1 and PO10397-2. Pursuant to these purchase orders, Kissler paid Counterclaim Defendants more than $1 million, not including shipping and tariffs that Kissler also paid, and received the corresponding Plumbing Parts. Kissler proceeded to resell some of the Plumbing Parts to Home Depot, as planned.

21.    In or about late 2022, however, Danco contacted Kissler and asserted that Kissler had violated Danco's patent rights by virtue of its sale of Plumbing Products to Home Depot. Kissler—understandably alarmed—contacted Mr. He to discuss Danco's patent allegations. Mr. He responded by stating to Kissler on or about November 21, 2022, *inter alia*, "no worries" and "I will stand behind you." Contrary to these assurances, however, Counterclaim Defendants have consistently failed and refused to indemnify Kissler with respect to Danco's claims, despite Kissler's demands that they do so.

22.    On or about April 19, 2023, Danco filed a lawsuit against Kissler for patent infringement (the "Danco Lawsuit"). Upon being sued by Danco, Kissler again contacted Mr. He to discuss the case and Counterclaim Defendants' obligations to Kissler regarding same. Mr. He refused to engage with Kissler on such issues and ignored Kissler's request for intervention on its behalf.

23.    With Counterclaim Defendants having refused Kissler's requests, and left with no alternative, Kissler negotiated a settlement of Danco's claims on a confidential basis, requiring significant payments by Kissler, resulting in the dismissal of the Danco Lawsuit on or about July 17, 2023.

24. In addition to the settlement payments, defense fees, and costs that Kissler incurred in connection with the Danco Lawsuit, Kissler was also left with substantial quantities of Plumbing Parts that it had purchased from Counterclaim Defendants, but which it could not sell due to Danco's claims.

## FIRST COUNTERCLAIM

### Fraud

### (Against All Counterclaim Defendants)

25. Kissler realleges and incorporates herein by reference each and every allegation set forth in paragraphs 1 through 24, above.

26. Mr. He, on behalf of himself and all Counterclaim Defendants, made representations to Kissler as discussed above, including, without limitation, that Counterclaim Defendants could and would properly and lawfully provide suitable Plumbing Parts to Kissler for resale to Home Depot based upon Counterclaim Defendants' prior experience and familiarity with the production of such parts, including by way of Mr. He's prior dealings with Danco.

27. The foregoing representations were false and/or materially misleading because the designs, processes and other information upon which Counterclaim Defendants relied and would use to provide the Plumbing Parts to Kissler were covered by one or more patents held by Danco, and thus Counterclaim Defendants' production and sale of such products to Kissler would be unlawful, as would Kissler's subsequent sale of such products to Home Depot—all of which was unknown to Kissler, but known to Counterclaim Defendants, which they deliberately failed to mention and concealed from Kissler.

28. Counterclaim Defendants knew that the foregoing representations were false and/or materially misleading. This is evidenced by, among other things, the fact that Mr. He had personally signed an express written agreement with Danco, years beforehand, confirming Danco's patent rights, which Counterclaim Defendants deliberately omitted and concealed from Kissler.

29.    Counterclaim Defendants made the foregoing misrepresentations with the intent to induce Kissler to purchase Plumbing Parts from Counterclaim Defendants.

30.    Kissler reasonably and justifiably relied on Counterclaim Defendants' misrepresentations, and based thereon proceeded to purchase Plumbing Parts from Counterclaim Defendants. Kissler would not have done so in the absence of Counterclaim Defendants' misrepresentations.

31.    As a proximate result of the foregoing, Kissler has suffered damages in excess of $1 million, in an amount to be proven at trial.

32.    Mr. He, on behalf of himself and as an officer of SHLA and Park 2580, engaged in the foregoing fraudulent and despicable conduct intentionally and with a willful and conscious disregard of the rights of others, thereby engaging in malice, oppression and fraud, and warranting an award of exemplary damages against Counterclaim Defendants and in favor of Kissler, so as to punish and deter such conduct.

## SECOND COUNTERCLAIM

### Negligent Misrepresentation

### (Against All Counterclaim Defendants)

33.    Kissler realleges and incorporates herein by reference each and every allegation set forth in paragraphs 1 through 24, above.

34.    Mr. He, on behalf of himself and all Counterclaim Defendants, made representations to Kissler as discussed above, including, without limitation, that Counterclaim Defendants could and would properly and lawfully provide suitable Plumbing Parts to Kissler for resale to Home Depot based upon Counterclaim Defendants' prior experience and familiarity with the production of such parts, including by way of Mr. He's prior dealings with Danco.

35.    The foregoing representations were false and/or materially misleading because the designs, processes and other information upon which Counterclaim Defendants relied and would use to provide the Plumbing Parts to Kissler were

covered by one or more patents held by Danco, and thus Counterclaim Defendants' production and sale of such products to Kissler would be unlawful, as would Kissler's subsequent sale of such products to Home Depot—all of which was unknown to Kissler, but known to Counterclaim Defendants, which they failed to mention to Kissler.

36.    Counterclaim Defendants had no reasonable basis to believe that the foregoing representations were true and not materially misleading.  This is evidenced by, among other things, the fact that Mr. He had personally signed an express written agreement with Danco, years beforehand, confirming Danco's patent rights.

37.    Counterclaim Defendants made the foregoing misrepresentations with the intent to induce Kissler to purchase Plumbing Parts from Counterclaim Defendants.

38.    Kissler reasonably and justifiably relied on Counterclaim Defendants' misrepresentations, and based thereon proceeded to purchase Plumbing Parts from Counterclaim Defendants.  Kissler would not have done so in the absence of Counterclaim Defendants' misrepresentations.

39.    As a proximate result of the foregoing, Kissler has suffered damages in excess of $1 million, in an amount to be proven at trial.

### THIRD COUNTERCLAIM

**Breach of Contract**

**(Against All Counterclaim Defendants)**

40.    Kissler realleges and incorporates herein by reference each and every allegation set forth in paragraphs 1 through 24, above.

41.    Counterclaim Defendants agreed to sell to Kissler, and Kissler agreed to purchase from Counterclaim Defendants, lawfully produced Plumbing Products, as reflected in purchase orders numbered PO10127, PO10363, PO10397-1 and PO10397-2 with the mutual understanding and awareness that Kissler would resell such products to Home Depot.

42.    Counterclaim Defendants have breached the parties' agreement by, *inter*

*alia*, providing Kissler with Plumbing Products that violate one or more of Danco's patents, rendering such products unsaleable and laden with liability.

43. Kissler has duly performed any obligations on its part under the parties' agreement, except any that were excused by Counterclaim Defendants' breaches and/or other conduct.

44. As a proximate result of the foregoing, Kissler has suffered damages in excess of $1 million, in an amount to be proven at trial.

## FOURTH COUNTERCLAIM

### Breach of Implied Covenant of Good Faith and Fair Dealing

### (Against All Counterclaim Defendants)

45. Kissler realleges and incorporates herein by reference each and every allegation set forth in paragraphs 1 through 24, above.

46. Counterclaim Defendants agreed to sell to Kissler, and Kissler agreed to purchase from Counterclaim Defendants, lawfully produced Plumbing Products, as reflected in purchase orders numbered PO10127, PO10363, PO10397-1 and PO10397-2, with the mutual understanding and awareness that Kissler would resell such products to Home Depot.

47. Counterclaim Defendants have breached the covenant of good faith and fair dealing implied by law into parties' agreement by, *inter alia*, providing Kissler with Plumbing Products that violate one or more of Danco's patents, rendering such products unsaleable and laden with liability.

48. Kissler has duly performed any obligations on its part under the parties' agreement, except any that were excused by Counterclaim Defendants' breaches and/or other conduct.

49. As a proximate result of the foregoing, Kissler has suffered damages in excess of $1 million, in an amount to be proven at trial.

## FIFTH COUNTERCLAIM

**Breach of Implied Warranty of Non-Infringement**

**(Against All Counterclaim Defendants)**

50.    Kissler realleges and incorporates herein by reference each and every allegation set forth in paragraphs 1 through 24, above.

51.    There was a contract of sale between Counterclaim Defendants, as sellers, and Kissler, as buyer, regarding Plumbing Products as reflected in purchase orders numbered PO10127, PO10363, PO10397-1 and PO10397-2.

52.    Counterclaim Defendants regularly deal in goods of the same kind as the Plumbing Products.

53.    Kissler did not furnish the specifications for the Plumbing Products to Counterclaim Defendants.

54.    Implied by law into the parties' contract of sale are various implied warranties, including, *inter alia*, an implied warranty against rightful claims of patent infringement by third parties.

55.    At all relevant times, including at the time of delivery, the Plumbing Products were subject to a rightful claim of patent infringement by Danco, although Kissler had no knowledge of that fact until later, when Danco asserted its claim. Accordingly, Counterclaim Defendants breached their implied warranty.

56.    As a proximate result of said breach, Kissler has suffered damages and is entitled to recover same from Counterclaim Defendants, including, without limitation, indemnification against Kissler's liability to Danco and costs of defending against and settling such claims, all in excess of $1 million, in an amount to be proven at trial.

## SIXTH COUNTERCLAIM

**Implied Contractual Indemnity (a.k.a. Equitable Indemnity)**

**(Against All Counterclaim Defendants)**

57.    Kissler realleges and incorporates herein by reference each and every allegation set forth in paragraphs 1 through 24, above.

58.     There was a contract of sale between Counterclaim Defendants, as sellers, and Kissler, as buyer, regarding Plumbing Products as reflected in purchase orders numbered PO10127, PO10363, PO10397-1 and PO10397-2.

59.     Unbeknownst to Kissler, the Plumbing Products infringed one or more of Danco's patents.

60.     In fulfilling the contract of sale, Counterclaim Defendants failed to use reasonable care to avoid providing Kissler with goods that infringed Danco's patent rights.

61.     As a proximate result of Counterclaim Defendants' conduct, Kissler incurred liability to Danco and suffered other damages and losses.

62.     Kissler is entitled to indemnity from Counterclaim Defendants for all liabilities, damages and losses Kissler has suffered, including, without limitation, indemnification against Kissler's liability to Danco and costs of defending against and settling such claims, in excess of $1 million, in an amount to be proven at trial.

**WHEREFORE**, Kissler respectfully prays for judgment as follows:

A.     For compensatory damages according to proof;

B.     For punitive damages in an amount to be determined at trial;

C.     For indemnity as to Danco's patent infringement claims, including all amounts paid in the defense and settlement of such claims;

D.     For attorney's fees and costs as permitted by law;

E.     For pre-judgment interest as permitted by law; and

F.     For such other and further relief that the Court deems just and proper.

Dated:  March 17, 2025                    K&L GATES LLP

                                          By:/s/ *Kevin S. Asfour*
                                          Ronie M. Schmelz
                                          Kevin S. Asfour
                                          Lauren E. Elvick

                                          *Attorneys for Defendant and*
                                          *Counterclaimant KISSLER AND CO.*
                                          *INC.*

# **DEMAND FOR JURY TRIAL**

Kissler hereby demands a trial by jury on all issues so triable.


Dated:  March 17, 2025                    K&L GATES LLP

                                          By:/s/ *Kevin S. Asfour*
                                          Ronie M. Schmelz
                                          Kevin S. Asfour
                                          Lauren E. Elvick

                                          *Attorneys for Defendant and Counterclaimant KISSLER AND CO. INC.*

ANSWER, AFFIRMATIVE DEFENSES AND COUNTERCLAIMS