**K&L GATES LLP**
Ronie Schmelz (State Bar No. 130798)
ronie.schmelz@klgates.com
(310) 552-5002
Kevin S. Asfour (State Bar No. 228993)
kevin.asfour@klgates.com
(310) 552-5016
Lauren E. Elvick (State Bar No. 348619)
lauren.elvick@klgates.com
(310) 552-5049
10100 Santa Monica Blvd.
Floor 8
Los Angeles, CA 90067

Attorneys for Defendant and Counterclaimant
KISSLER AND CO. INC.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| SHLA GROUP INC., PARK 2580, INC., <br><br> Plaintiffs, <br><br> v. <br><br> KISSLER AND CO. INC. <br><br> Defendant. <br><br> ———————————————— <br><br> KISSLER AND CO. INC., <br><br> Counterclaimant, <br><br> v. <br><br> SHLA GROUP INC., PARK 2580, INC., and GANG HE, <br><br> Counterclaim Defendants. | Case No. 2:23-cv-07567-TJH-BFM <br><br> [Hon. Judge Terry J. Hatter, Jr.] <br><br> **COUNTERCLAIMANT KISSLER AND CO. INC'S OPPOSITION TO COUNTERCLAIM DEFENDANTS SHLA GROUP INC., PARK 2580, INC., AND GANG HE'S MOTION TO DISMISS COUNTERCLAIMANT KISSLER AND CO. INC'S COUNTERCLAIMS** <br><br> Date:       June 2, 2025 <br> Time:       UNDER SUBMISSION <br> Courtroom:  9C |

# **TABLE OF CONTENTS**

I.      INTRODUCTION ...................................................................................... 1

II.     RELEVANT BACKGROUND AND PROCEDURAL HISTORY ................... 3

III.    LEGAL STANDARDs .............................................................................. 6

IV.     THE COURT SHOULD DENY COUNTERCLAIM'S DEFENDANTS' MOTION TO DISMISS ........................................................................... 7

        A.      Kissler Sufficiently Pleaded Claims for Fraud and Negligent Misrepresentation. .......................................................................... 7

                1.      Kissler Sufficiently Alleged the Who, What, When, Where, and How of Counterclaim Defendants' Misrepresentations. ........... 7

                2.      Kissler Sufficiently Alleged Fraudulent Omission. ........................ 10

        B.      The Economic Loss Rule Does Not Apply to Kissler's Fraud Claims. .......................................................................................... 11

        C.      Kissler Sufficiently Pleaded Claims Against Mr. He as an Individual Defendant. .................................................................... 13

                1.      Mr. He is Directly and Individually Liable on Kissler's Fraud and Negligent Misrepresentation Claims. ...................................... 13

                2.      Kissler Has Adequately Alleged Mr. He's Liability on the Contract-Based Claims. ................................................................ 14

V.      CONCLUSION ...................................................................................... 16

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Charnay v. Cobert*,
    145 Cal. App. 4th 170 (2006) ............................................................... 7

*CNC Software, LLC v. Global Engineering LLC*,
    No. 22-2488, 2023 WL 3409463 (N.D. Cal. May 12, 2023) ............................ 13

*Comair Ltd. v. Boeing Co.*,
    No. 23-0176, 2023 WL 6239308 (W.D. Wash. Sep. 25, 2023) ........................ 10

*Dhital v. Nissan N. Am., Inc.*,
    84 Cal. App. 5th 828 (2022) ........................................................... 12, 13

*Harris v. Cnty. of Orange*,
    682 F.3d 1126 (9th Cir. 2012) .............................................................. 6

*Huntzinger v. Aqua Lung Am., Inc.*,
    No. 15-cv-1146 WQH, 2015 WL 8664284 (S.D. Cal. Dec. 10, 2015) ............. 11

*Kearns v. Ford Motor Co.*,
    567 F.3d 1120 (9th Cir. 2009) .............................................................. 6

*Lemus v. Rite Aid Corp.*,
    613 F. Supp. 3d 1269 (C.D. Cal. 2022) .................................................... 9

*Mesler v. Bragg Mgmt. Co.*,
    39 Cal. 3d 290 (1985) ...................................................................... 14

*U.S. ex rel. Modglin v. DJO Global, Inc.*,
    114 F. Supp. 3d 993 (C.D. Cal. 2015) ................................................. 7, 9

*Morgan v. AT&T Wireless Servs., Inc.*,
    177 Cal. App. 4th 1235 (2009) ........................................................... 10

*Neilson v. Union Bank of California, N.A.*,
    290 F. Supp. 2d 1101 (C.D. Cal. 2003) .................................................. 15

*NTD Architects v. Baker*,
    950 F. Supp. 2d 1151 (S.D. Cal. 2013) .................................................. 13

*Odom v. Microsoft Corp.*,
    486 F.3d 541 (9th Cir. 2007) ........................................................... 7, 9

*Painters & Allied Trades Dist. Council 82 Health Care Fund v. Takeda
    Pharm. Co. Ltd.*,
    520 F. Supp. 3d 1258 (C.D. Cal. 2021) ...........................................................8, 10

*Rattagan v. Uber Technologies, Inc.*,
    17 Cal. 5th 1 (2024) ...........................................................................................12

*Robinson Helicopter Co. v. Dana Corp.*,
    34 Cal. 4th 979 (2004) .......................................................................................13

*Roman Catholic Archbishop v. Superior Court*,
    15 Cal. App. 3d 405 (1971) ................................................................................14

*Rowe v. Educ. Credit Mgmt. Corp.*,
    559 F.3d 1028 (9th Cir. 2009) ..............................................................................6

*Sanford v. MemberWorks, Inc.*,
    625 F.3d 550 (9th Cir. 2010) ................................................................................9

*Service by Medallion, Inc. v. Clorox Co.*,
    44 Cal. App. 4th 1807 (1996) ...............................................................................7

*Starr v. Baca*,
    652 F.3d 1202 (9th Cir. 2011) ..............................................................................6

*Vess v. Ciba-Geigy Corp. USA*,
    317 F.3d 1097 (9th Cir. 2003) ..............................................................................6

*Zoran Corp. v. Chen*,
    185 Cal. App. 4th 799 (2010) .............................................................................15

**Other Authorities**

Fed. R. Civ. P. 9(b) ..................................................................................*passim*

Fed. R. Civ. P. 12(b)(6) ........................................................................................6

## MEMORANDUM OF POINTS AND AUTHORITIES

Counterclaimant Kissler and Co. Inc ("Kissler") respectfully submits this Memorandum of Points and Authorities in Opposition to Counterclaim Defendants SHLA Group Inc. ("SHLA"), Park 2580, Inc. ("Park 2580"), and Gang HE's ("Mr. He") (collectively, "Counterclaim Defendants") Motion to Dismiss Kissler's Counterclaims (the "Motion").

## I.    INTRODUCTION

Kissler is a family-owned plumbing repair part manufacturer and distributor located in northern New Jersey.  Counterclaim Defendants are plumbing and home-improvements manufacturers and distributors located in California, who approached and induced Kissler in June 2020 to purchase in excess of $1 million worth of products (the "Plumbing Parts") from them, which the parties understood were intended for resale to Home Depot.  In doing so, Counterclaim Defendants knowingly and specifically represented to Kissler that they were experienced manufacturers and suppliers of replacement parts for fixtures made by Danco, Inc. ("Danco"), and could properly sell such Plumbing Parts to Kissler.  This representation was false and misleading.  Rather, Counterclaim Defendants knew full-well that the Danco designs, toolings, and other related information in Mr. He's possession were subject to one or more patents held by Danco, and that Mr. He (and his companies) were forbidden from using such information to produce or sell the Plumbing Parts, both by patent law and, further, by an express written agreement that Mr. He had personally signed with Danco.

In addition to his express misrepresentations, Mr. He intentionally failed to disclose his knowledge of the Danco patents to Kissler, who was completely unaware of the patents, let alone that they applied to the Plumbing Parts.  Accordingly, Mr. He knowingly and fraudulently induced Kissler to enter into a contract with Counterclaim Defendants to purchase these Plumbing Parts by the false and materially misleading representations and omissions set forth above.  Mr. He thereafter directed Kissler to

1

submit purchase orders to Counterclaim Defendants for the Plumbing Parts, and solicited payment for same. Kissler complied. Thereafter, Kissler was sued by Danco for patent infringement, causing Kissler to suffer substantial damages.

Counterclaim Defendants now move to dismiss portions of Kissler's Counterclaims, arguing that (1) Kissler has not alleged fraud with sufficient particularity under Rule 9(b); (2) Kissler's fraud and negligent misrepresentation claims are barred by the economic loss rule; and (3) Kissler has not pleaded facts sufficient to support *any* claims against Mr. He in his individual capacity. None of these arguments has any merit.

First, as detailed herein, Kissler's allegations are more than sufficient to satisfy the particularity requirements of Rule 9(b). In this regard, the Motion simply ignores most of Kissler's specific factual allegations detailing Counterclaim Defendants' fraudulent conduct, which set forth in detail the "who, what, when, where and how" of the misrepresentations. Further, the Motion misconstrues the parameters of Rule 9(b)—specifically, the Rule's express provision that the defendant's knowledge, awareness, and state of mind need *not* be pleaded with particularity.

Second, as a matter of law, the economic loss rule does *not* apply to claims of fraudulent *inducement* to a contract, as is alleged here—and indeed, the very California Supreme Court case on which the Counterclaim Defendants rely in the Motion expressly acknowledges as much.

Third, Kissler's allegations are sufficient to support its claims against Mr. He, individually. As to the fraud-based claims, Mr. He, himself, is alleged to have made the false and misleading statements at issue to Kissler, and the law is clear that a corporate officer is liable in his individual capacity for tortious conduct that he personally commits, *without* the need for veil-piercing. And, as to the contract-based claims, Kissler's allegations are sufficient to implicate Mr. He's liability as an alter ego of the two corporate defendants (which he treated as interchangeable and mere formalities).

In sum, Kissler pleaded sufficient factual allegations supporting each of its Counterclaims against each of the Counterclaim Defendants. As such, the Court should deny the Motion in its entirety.

## II.    RELEVANT BACKGROUND AND PROCEDURAL HISTORY

On September 12, 2023, SHLA Group and Park 2580 filed their Complaint against Kissler arising out of the parties' contract for the Plumbing Parts.[1] (DE 1.) On January 16, 2024, Kissler moved to dismiss the Complaint (except for its declaratory relief claim), which motion this Court granted on May 1, 2024, with leave to amend. (DE 15, 25.) Kissler thereafter moved to dismiss SHLA Group and Park 2580's First Amended Complaint ("FAC") on June 14, 2024. (DE 26, 27.) On March 3, 2025, the Court granted in part and denied in part Kissler's motion to dismiss the FAC. (DE 34.) Kissler then filed its Answer, Affirmative Defenses, and Counterclaims to the FAC on March 17, 2025. (DE 35.) Kissler has pleaded six Counterclaims against the Counterclaim Defendants, including Mr. He, namely: (i) fraud; (ii) negligent misrepresentation; (iii) breach of contract; (iv) breach of implied covenant of good faith and fair dealing; (v) breach of implied warranty of non-infringement; and (vi) implied contractual indemnity. (*See id.*)

The relevant factual allegations for purposes of the pending Motion are as follows:

In or about June of 2020, Mr. He, on behalf of SHLA, approached Kissler to offer to sell certain "Plumbing Parts to Kissler, with the understanding that Kissler, in turn, would resell the Plumbing Parts to Home Depot." (*Id.* at ¶ 16.) On June 10, 2020, Mr. He represented to Kissler that he had been a supplier to Danco since 2003 or 2004, and "[f]or most of their store items, we have toolings and can start production

---

[1] As evidenced by the exhibits to their own Complaint (*see* DE 1-1, 1-2, 1-3), SHLA Group and Park 2580's filing of this action was prompted by Kissler's pre-suit correspondence advising them that Kissler was preparing to file suit in the U.S. District Court for the District of New Jersey. In other words, they engaged in a "race to the courthouse" in an attempt to have the dispute venued in California rather than New Jersey.

3

almost immediately." (*Id.* at ¶ 17.)  Mr. He made these statements to represent that he
and SHLA were experienced and familiar with the production of the Plumbing Parts,
and that he and SHLA were well-suited to supply such products to Kissler for sale to
Home Depot.  (*Id.*)

However, "Mr. He knew full-well, but concealed from Kissler . . . that the
Danco designs, toolings, and other related information in Mr. He's possession were
subject to one or more patents held by Danco, and that Mr. He (and his companies)
were forbidden from using such information to produce or sell the Plumbing Parts,
both by patent law and, further, by an express written agreement that Mr. He had
personally signed with Danco some years beforehand, confirming Danco's patent
rights." (*Id.* at ¶ 18.)  Despite this, throughout mid to late 2021 (still prior to the
formation of the parties' contract), Mr. He "consistently represented to Kissler that
Counterclaim Defendants were willing, able and well-suited to produce Plumbing Parts
for Kissler to resell to Home Depot on a proper and lawful basis." (*Id.* at ¶ 19.)

Kissler, completely unaware of these Danco patent issues throughout Mr. He's
repeated representations, "agreed to purchase Plumbing Parts from Counterclaim
Defendants, based upon Mr. He's representations that he and his companies had the
relevant experience and knowledge for the job, and were well-suited to provide Kissler
with lawfully produced goods." (*Id.* at ¶ 19.)  Mr. He then instructed Kissler to direct
purchase orders to SHLA, initially, but thereafter changed his mind and instructed
Kissler to send the purchase orders to Park 2580 (another entity that Mr. He had
recently formed).  (*Id.* at ¶ 20.)  Kissler complied, submitting purchase orders to
Counterclaim Defendants to the tune of more than $1 million, and paying for same.
(*Id.*)  Kissler then resold some of the Plumbing Parts to Home Depot, as Kissler and
Counterclaim Defendants originally planned.  (*Id.*)

In or about late 2022, Danco contacted Kissler to assert Kissler had violated
Danco's patent rights by virtue of its sale of Plumbing Parts to Home Depot.  (*Id.* at ¶
21.)  Kissler—understandably alarmed—contacted Mr. He to discuss Danco's patent

allegations. (*Id.*) Mr. He responded to Kissler on or about November 21, 2022, *inter alia*, "no worries" and "I will stand behind you." (*Id.* at ¶ 21.) Counterclaim Defendants thereafter failed to indemnify Kissler as promised. (*Id.*) Danco then sued Kissler for patent infringement for Kissler's sale of Plumbing Parts to Home Depot, and Mr. He refused to engage with Kissler on such issues and ignored Kissler's request for intervention on its behalf. (*Id.* at ¶ 22.) The Danco Lawsuit caused damages to Kissler by way of significant settlement payments, defense fees, and costs incurred and, moreover, Kissler was further damaged by being left with inventory that Kissler could not sell due to Danco's claims. (*Id.* at ¶¶ 23-24.)

By way of the factual allegations above, the Counterclaims assert that: (1) Mr. He represented to Kissler that Counterclaim Defendants could and would properly and lawfully provide suitable Plumbing Parts to Kissler for resale to Home Depot based upon Counterclaim Defendants' prior experience and familiarity with the production of such parts, including by way of Mr. He's prior dealings with Danco (*id.* at ¶ 26); (2) Mr. He's representations were false and/or materially misleading because the Plumbing Parts were covered by one or more patents held by Danco, and thus Counterclaim Defendants' production and sale of such products to Kissler would be unlawful, as would Kissler's subsequent sale of such products to Home Depot (*id.* at ¶ 27); (3) Counterclaim Defendants knew these representations were false and/or materially misleading because, *inter alia*, Mr. He knew about the patents and had personally signed an express written agreement with Danco, years beforehand, confirming Danco's patent rights (*id.* at ¶ 28); (4) Counterclaim Defendants deliberately omitted and concealed from Kissler Danco's patent rights to the Plumbing Parts when representing that it could lawfully sell the Plumbing Parts to Kissler for Kissler to then resell to Home Depot (*id.* at ¶ 28); (5) Counterclaim Defendants made the foregoing misrepresentations and omissions with the intent to induce Kissler to purchase Plumbing Parts from Counterclaim Defendants (*id.* at ¶ 29); (6) Kissler reasonably and justifiably relied on Counterclaim Defendants' misrepresentations in

1  purchasing the plumbing parts from Counter Defendants (*id.* at ¶ 30); and (7) and as a

2  proximate result of the foregoing, Kissler has suffered damages in excess of $1

3  million, including without, limitation by way of the Danco Lawsuit for patent

4  infringement.  (*id.* at ¶ 31.)

5  **III.    LEGAL STANDARDS**

6         Dismissal pursuant to Rule 12(b)(6) is based on a determination that the claim as

7  pleaded is implausible.  At the pleading stage, a court must "accept all factual

8  allegations in the complaint as true and construe the pleadings in the light most

9  favorable to the nonmoving party."  *Rowe v. Educ. Credit Mgmt. Corp.*, 559 F.3d

10  1028, 1029–30 (9th Cir. 2009) (citation and quotation omitted).  A complaint need

11  only "contain[] 'sufficient factual matter, accepted as true, to state a claim of relief that

12  is plausible on its face.'"  *Harris v. Cnty. of Orange*, 682 F.3d 1126, 1131 (9th Cir.

13  2012) (quoting *Ashroft v. Iqbal*, 556 U.S. 662, 678 (2009)).  Thus, "[i]f there are two

14  alternative explanations, one advanced by [a] defendant and the other advanced by [a]

15  plaintiff, both of which are plausible, [a] plaintiff's complaint survives a motion to

16  dismiss under Rule 12(b)(6)."  *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011).

17         When a complaint alleges claims sounding in fraud, it must also "state with

18  particularity the circumstances constituting fraud or mistake."  Fed. R. Civ. P. 9(b).

19  The context surrounding the fraud must "be 'specific enough to give defendants notice

20  of the particular misconduct . . . so that they can defend against the charge and not just

21  deny that that they have done anything wrong.'"  *Kearns v. Ford Motor Co.*, 567 F.3d

22  1120, 1124 (9th Cir. 2009) (quoting *Bly-Magee v. California*, 236 F.3d 1014, 1019

23  (9th Cir. 2001)).  Thus, a claim for fraud must allege "the who, what, when, were, and

24  how" of the misrepresentations.  *Kearns*, 567 F.3d at 1124; *Vess v. Ciba-Geigy Corp.*

25  *USA*, 317 F.3d 1097, 1106 (9th Cir. 2003).

26         Importantly, however, Rule 9(b)'s particularity requirements do **not** apply to the

27  defendant's mindset or awareness, *i.e.*: "**[m]alice, intent, knowledge, and other**

28  **conditions of a person's mind may be alleged generally**."  Fed. R. Civ. P. 9(b)

6

(emphasis added); *see also Odom v. Microsoft Corp.*, 486 F.3d 541, 553-54 (9th Cir. 2007) ("While the factual circumstances of the fraud itself must be alleged with particularity, the state of mind—or scienter—of the defendants may be alleged generally."); *U.S. ex rel. Modglin v. DJO Global, Inc.*, 114 F. Supp. 3d 993, 1011-12 (C.D. Cal. 2015) ("The knowledge or scienter element of a fraud claim need not be pleaded with particularity, but may be alleged generally pursuant to Rule 9(b).") (cleaned up).

## IV.    THE COURT SHOULD DENY COUNTERCLAIM DEFENDANTS' MOTION TO DISMISS

### A.    Kissler Sufficiently Pleaded Claims for Fraud and Negligent Misrepresentation.

"A complaint for fraud must allege the following elements: (1) a knowingly false representation by the defendant; (2) an intent to deceive or induce reliance; (3) justifiable reliance by the plaintiff; and (4) resulting damages." *Service by Medallion, Inc. v. Clorox Co.*, 44 Cal. App. 4th 1807, 1816 (1996). Negligent misrepresentation is also a species a fraud, and its elements are nearly identical, the only difference being that "in a claim for negligent misrepresentation, the plaintiff need not allege the defendant made an intentionally false statement, but simply one as to which he or she lacked any reasonable ground for believing the statement to be true." *Charnay v. Cobert*, 145 Cal. App. 4th 170, 184 (2006).

#### 1.    Kissler Sufficiently Alleged the Who, What, When, Where, and How of Counterclaim Defendants' Misrepresentations.

As outlined in Section II, above, Kissler has sufficiently pleaded the who, what, when, where, and how of Counterclaim Defendants' fraudulent misrepresentations to Kissler. Counterclaim Defendants erroneously argue that "Kissler's counterclaims fail to meet the Rule 9(b) standard because the allegations do not specify the contents of what-was-said-or-written that can be plausibly interpreted as false or misrepresentations." (DE 44, 7:15-17.) This contention ignores Kissler's detailed

7

factual allegations—including the dates, speakers, and contents of the misrepresentations at issue, as well as the statements' falsity.

Again, as noted above: Kissler has alleged that, beginning in June 2020, Mr. He and SHLA contacted Kissler seeking to sell Kissler Plumbing Parts so that Kissler could in turn sell them to Home Depot.  (*See* DE 35, Counterclaims, ¶¶ 15-17.)  More specifically, SHLA employee Kevin Mullins sent the first email to Kissler on June 10, 2020, wherein he stated that Mr. He "was a major supplier to Danco for many years." (*Id.* at ¶ 17.)  Still on June 10, 2020, Mr. He himself then stated in an email to Kissler, "As Kevin introduced, we started to supply Danco around year 2003- 2004. For most of their store items, we have toolings and can start production almost immediately." (*Id.*)  As plausibly alleged in the Counterclaims, "Mr. He made these statements to demonstrate that he and SHLA were experienced and familiar with the production of the Plumbing Parts, and that he and SHLA were well-suited to supply such products to Kissler for sale to Home Depot."  (*Id.*)  Further, in addition to these initial statements, Kissler has also alleged that, over the course of 2021 (and still prior to the parties' contract), Mr. He made "representations that he and his companies had the relevant experience and knowledge for the job, and were well-suited to provide Kissler with lawfully produced goods."[2]  (*Id.* at ¶ 19.)

All of the foregoing representations, of course, were false and misleading—as the Plumbing Parts were covered by one or more Danco patents.  (*See id.* at ¶ 18.) Kissler has sufficiently alleged such falsity, as well as Mr. He's knowledge of same, pleading as follows: "What Kissler did not know—and what Mr. He knew full-well, but concealed from Kissler—is that the Danco designs, toolings, and other related

---

[2] Together with the initial June 10, 2020 misrepresentations, these allegations further bolster Kissler's fraud-based claims.  *See, e.g., Painters & Allied Trades Dist. Council 82 Health Care Fund v. Takeda Pharm. Co. Ltd.*, 520 F. Supp. 3d 1258, 1268 (C.D. Cal. 2021) (where a plaintiff alleges "repeated and systematic use of the misleading language," a complaint need "not identify the time and place of **every** [representation] that included the pertinent language," where "the failure to allege such matters [does] not deprive the defendant of meaningful notice of the grounds upon which the plaintiff bases the claim") (internal quote marks and citations omitted).

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF KISSLER'S OPPOSITION TO MOTION TO DISMISS COUNTERCLAIMS

information in Mr. He's possession were subject to one or more patents held by Danco..." (*Id.* at ¶ 18.)  **This allegation, alone**, is sufficient to plead Mr. He's mindset.  *See Sanford v. MemberWorks, Inc.*, 625 F.3d 550, 557–58 (9th Cir. 2010) ("intent, knowledge, and other conditions of a person's mind may be alleged generally") (quoting Fed. R. Civ. P. 9(b)); *Odom*, 486 F.3d at 553-54; *U.S. ex rel. Modglin*, 114 F. Supp. 3d at 1011-12 ("The knowledge or scienter element of a fraud claim need not be pleaded with particularity, but may be alleged generally pursuant to Rule 9(b).").

Yet the Counterclaims go even *further*, alleging that "Mr. He (and his companies) were forbidden from using such information to produce or sell the Plumbing Parts, both by patent law and, further, by **an express written agreement that Mr. He had personally signed with Danco some years beforehand, confirming Danco's patent rights**." (Counterclaims, ¶ 18.)  In this regard, the Motion complains that "Kissler has not included a copy of the agreement," that "Kissler's pleading does not have any details about the agreement," and that "[t]he pleading has not specified when the agreement was executed." (*See* Motion, p. 3:17-19.)  These arguments fail for multiple independent reasons.  <u>First</u>, as detailed above, even **without** the allegations concerning the written agreement, Kissler's fraud claims would still be adequately pleaded because a defendant's knowledge and mindset need **not** be pleaded with particularity.  *See* Fed. R. Civ. P. 9(b); *Sanford* , 625 F.3d at 557–58; *Odom*, 486 F.3d at 553-54; *U.S. ex rel. Modglin*, 114 F. Supp. 3d at 1011-12. <u>Second</u>, Mr. He—as the one who *signed* the agreement—is already presumably apprised of its details, and thus cannot legitimately complain about a lack of specificity in that regard.  *See, e.g., Lemus v. Rite Aid Corp.*, 613 F. Supp. 3d 1269, 1281 (C.D. Cal. 2022) ("the pleading requirements are relaxed when 'the circumstances of the alleged fraud are peculiarly within the defendant's knowledge'") (quoting *Neubronner v. Milken*, 6 F.3d 666, 672 (9th Cir. 1993)).  <u>Third</u>, Mr. He's knowledge of Danco's

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF KISSLER'S
OPPOSITION TO MOTION TO DISMISS COUNTERCLAIMS

1   patent rights is not necessarily limited to the four corners of the written agreement, in
2   any event.

3        Lastly, the Counterclaim Defendants briefly argue (in a footnote) that
4   misrepresenting their ability to lawfully produce the goods "constitutes a mere
5   opinion" and is akin to "puffing."  This contention is baseless: whether a product does,
6   or does not, infringe a third party's patent is inherently *not* a matter of "opinion"—it is
7   objectively verifiable, and indeed can form the basis for a civil lawsuit (as happened
8   here).  The only authority they cite in support of this misguided argument is *Comair*
9   *Ltd. v. Boeing Co.*, No. 23-0176, 2023 WL 6239308 (W.D. Wash. Sep. 25, 2023).  The
10  *Comair* decision, however, actually supports Kissler:  There, the court found that *some*
11  of the allegations on which the plaintiff sought to base its fraud claim were indeed too
12  vague and subjective to support liability, such as "reliable and time-tested," and "very
13  deliberate design enhancements."  *See id.* at *3 ("The court agrees with Boeing that
14  *these* statements are too general to support fraudulent inducement or omission")
15  (emphasis in original).  But the court found that other statements, which were
16  falsifiable, *did* support the plaintiff's fraud claims and denied the defendant's motion
17  to dismiss accordingly.  *See id.*

18       In sum, Kissler's fraud-based claims are plausible and supported by
19  particularized allegations of misrepresentations by Counterclaim Defendants.  The
20  Court should deny the Motion accordingly.

21           2.    Kissler Sufficiently Alleged Fraudulent Omission.

22       Kissler's fraud-based claims find further support in the doctrine of fraudulent
23  omission.  To state a claim based upon fraudulent omission, the plaintiff "must
24  sufficiently identify 'the particular information that should have been disclosed, the
25  reason the information should have been disclosed, the person who should have
26  disclosed it, and the approximate time or circumstances in which the information
27  should have been disclosed.'"  *Painters*, 520 F. Supp. 3d at 1268 (internal quotations
28  omitted); *see also Morgan v. AT&T Wireless Servs., Inc.*, 177 Cal. App. 4th 1235,

10

1262 (2009) ("duty to disclose arises from the making of representations that were misleading or false").  Here, Kissler identified that Mr. He should have disclosed to Kissler that Danco held patent rights to Plumbing Parts when Mr. He sought to sell, and indeed induced Kissler to purchase from Counterclaim Defendants, the Plumbing Parts for Kissler to then resell to Home Depot.

In *Huntzinger v. Aqua Lung Am., Inc.*, a case involving scuba diving computers, fraud by omission was sufficiently alleged where the plaintiff alleged that (1) the defendant advertised and distributed the dive computers without disclosing the material fact that the computers were defective; (2) the defendant advertised the dive computers as safe; and (3) the defendant knew that the computers contained safety defects, which it learned from customer complaints and its work repairing the alleged defects.  *Huntzinger v. Aqua Lung Am., Inc.*, No. 15-cv-1146 WQH, 2015 WL 8664284, at *1 (S.D. Cal. Dec. 10, 2015).  Similarly, here, Kissler alleges: (1) Mr. He represented to Kissler it could sell Kissler the Plumbing Parts for Kissler to resell at Home Depot without disclosing the fact that the Plumbing Parts were subject to the Danco patent; (2) Mr. He represented to Kissler that Counterclaim Defendants were willing, able and well-suited to produce Plumbing Parts for Kissler to resell to Home Depot on a proper and lawful basis; and (3) Counterclaim Defendants knew that the Plumbing Parts were subject to Danco's patent, and thus Counterclaim Defendants could not lawfully produce and sell the Plumbing Parts to Kissler.

For each of these reasons, Kissler has adequately pleaded its claims for fraud and negligent misrepresentation against the Counterclaim Defendants, and the Court should deny Counterclaim Defendants' Motion.

### B. The Economic Loss Rule Does Not Apply to Kissler's Fraud Claims.

Counterclaim Defendants' argument under the economic loss rule fares no better.  The economic loss rule has no application because Kissler has alleged that Counterclaim Defendants fraudulently *induced* the parties' contract for the Plumbing Parts.  Indeed, this longstanding proposition—that the economic loss rule is

11

inapplicable to fraudulent inducement of a contract—is repeatedly acknowledged and reaffirmed by the very cases Counterclaim Defendants cite in their Motion. *See, e.g., Rattagan v. Uber Technologies, Inc.*, 17 Cal. 5th 1, 41 (2024) ("As we observed in *Lazar*, 'fraudulent inducement of contract—as the very phrase suggests—is not a context where the 'traditional separation of tort and contract law' [citations] obtains. To the contrary, this area of the law traditionally has involved both contract and tort principles and procedures. For example, it has long been the rule that where a contract is secured by fraudulent representations, **the injured party may elect to affirm the contract <u>and</u> sue for the fraud**.'") (emphasis added); *see also Dhital v. Nissan N. Am., Inc.*, 84 Cal. App. 5th 828, 843 (2022) ("Fraudulent inducement claims fall within an exception to the economic loss rule recognized by our Supreme Court.").

Here, Kissler alleges that Counterclaim Defendants fraudulently induced Kissler to do business with them by knowingly and falsely representing that they could lawfully sell Kissler the Plumbing Parts. This includes the specific, repeated representations that Counterclaim Defendants made to Kissler beginning more than a year *before* Kissler entered into any contract with Counterclaim Defendants, including, *inter alia*, the representations Mr. He made in June 2020 and thereafter throughout 2021 that Counterclaim Defendants could lawfully sell the Plumbing Parts. Kissler's fraud claims are further independent of the breach of contract claims because they also rest on Mr. He's fraudulent omission that the Plumbing Parts are subject to the Danco patent.

By contrast, Kissler alleges that, separate and apart from Counterclaim Defendants' fraud, and *after* the parties actually entered into the contract, Counterclaim Defendants breached the parties' contract by "providing Kissler with Plumbing Parts that violate one or more of Danco's patents, rendering such products unsaleable and laden with liability." (DE 35, ¶ 42.) Thus, the dispositive breach here (Counterclaim Defendants providing Kissler the Plumbing Parts) is legally distinct from the dispositive fraudulent inducement (Counterclaim Defendants inducing Kissler

12

to enter into the contract via knowingly false and/or materially misleading

representations that Kissler and failure to disclose the Danco patent).  Accordingly,

Counterclaim Defendants' reliance on the economic loss rule is misplaced.  *Robinson*

*Helicopter Co. v. Dana Corp.*, 34 Cal. 4th 979, 991 (2004) ("the economic loss rule

does not bar Robinson's fraud and intentional misrepresentation claims because they

were independent of Dana's breach of contract"); *Dhital*, 84 Cal. App. 5th at 843

("[T]he economic loss rule does not bar plaintiffs' claim here for fraudulent

inducement by concealment . . . . The trial court erred by sustaining Nissan's demurrer

to plaintiffs' fraud claim on the ground it was barred by the economic loss rule."); *see*

*also Rattagan*, 17 Cal. 5th at 28-29 (noting that economic loss rule does not bar

"causes of action for negligent misrepresentation and promissory fraud") (citations

omitted).

   The economic loss rule simply does not apply to Kissler's claims, and the Court

should deny the Motion on that basis.

   **C.**    **Kissler Sufficiently Pleaded Claims Against Mr. He as an Individual**
        **Defendant.**

   Counterclaim Defendants argue that Kissler has failed to state any claims

against Mr. He as an individual defendant.  This argument, too, has no merit, for

multiple reasons.

        1.    Mr. He is Directly and Individually Liable on Kissler's Fraud and
             Negligent Misrepresentation Claims.

   As a preliminary matter, the law has long been clear that "a corporate officer

who participates in the commission of a **tort** may be held individually liable,

**regardless** of whether the officer acted on behalf of the corporation in the course of

official duties and **regardless** of whether the corporate veil is pierced."  *CNC*

*Software, LLC v. Global Engineering LLC*, No. 22-2488, 2023 WL 3409463, at *4

(N.D. Cal. May 12, 2023) (emphasis added) (quoting *In re JUUL Labs, Inc.*, 497 F.

Supp. 3d 552, 670 (N.D. Cal. 2020); *see also NTD Architects v. Baker*, 950 F. Supp. 2d

1151, 1158-59 (S.D. Cal. 2013) (denying motion to dismiss tort claims brought by corporate agents, holding that "they can be held personally liable if they participate in the wrong or authorize or direct that it be done") (citing *U.S. Liab. Ins. Co. v. Haidinger-Hayes, Inc.*, 1 Cal. 3d 586, 595 (1970)).

Here, Mr. He does not seriously dispute this—rather, his only arguments for dismissal of the fraud and negligent misrepresentation claims against him are those set forth in the previous sections, and fail for the same reasons discussed above. In short, Kissler has adequately pleaded its fraud-based claims, and Mr. He is liable for same in that he, personally, made the representations and omissions that are at issue. Accordingly, he cannot circumvent individual liability merely because those representations sought to further the business interests of his companies, and the Court should deny his Motion as to the fraud-based claims.

> 2. Kissler Has Adequately Alleged Mr. He's Liability on the Contract-Based Claims.

As to the contract-based claims, Kissler has sufficiently alleged an alter ego theory of liability as to Mr. He which is sufficient at the pleadings stage. "There is no litmus test to determine when the corporate veil will be pierced; rather the result will depend on the circumstances of each particular case." *Mesler v. Bragg Mgmt. Co.*, 39 Cal. 3d 290, 300 (1985). The two general requirements are: "(1) that there be such unity of interest and ownership that the separate personalities of the corporation and the individual no longer exist and (2) that, if the acts are treated as those of the corporation alone, an inequitable result will follow." *Id.* "Among the factors to be considered in applying the doctrine are commingling of funds and other assets of the two entities, the holding out by one entity that it is liable for the debts of the other, identical equitable ownership in the two entities, use of the same offices and employees, and use of one as a mere shell or conduit for the affairs of the other." *Roman Catholic Archbishop v. v. Superior Court*, 15 Cal. App. 3d 405, 411 (1971). This list is non-exclusive, and California courts have relied on a host of other factors in

14

1    finding alter ego liability as well.  *See Zoran Corp. v. Chen*, 185 Cal. App. 4th 799,

2    811–12 (2010) (listing factors).

3    The Countercomplaint alleges that "Mr. He is, and at all relevant times was, the

4    owner, operator, proprietor, and an officer of both SHLA and Park 2580."

5    (Counterclaims, ¶ 6.)  Further, "Counterclaim Defendants acted jointly, in concert, and

6    with knowledge of the actions of each of the other Counterclaim Defendants; acted as

7    the agent, servant, and representative of each of the other Counterclaim Defendants

8    with respect to the actions complained of herein."  (*Id.* at ¶ 7.)  "At all relevant times

9    herein there existed, a unity of interest and ownership between and among

10   Counterclaim Defendants such that any individuality and separateness between and

11   among such Counterclaim Defendants have ceased to exist, and that Counterclaim

12   Defendants are the alter egos of one another."  (*Id.*)  The Counterclaims further allege

13   that Mr. He contacted Kissler to do business on behalf of SHLA, and that Mr. He

14   directed Kissler to submit purchase orders, first to SHLA, and then (without

15   explanation) to Park 2580, a new entity he had just formed.  (*Id.* at ¶¶ 15, 20.)  Mr. He

16   was Kissler's point of contact for both SHLA and Park 2580 in their business dealings

17   such that the three Counterclaim Defendants were treated as interchangeable by Mr.

18   He, and evidencing that both SHLA and Park 2580 were conduits for the affairs of Mr.

19   He.  As such, Kissler has pleaded sufficient factual allegations evidencing Mr. He's

20   unity of interest and ownership of both SHLA and Park 2580.

21   Regarding the element of inequitable result, bad faith is a critical factor in the

22   analysis.  *Neilson v. Union Bank of California, N.A.*, 290 F. Supp. 2d 1101, 1117 (C.D.

23   Cal. 2003) ("California courts generally require some evidence of bad faith conduct on

24   the part of defendants before concluding that an inequitable result justifies an alter ego

25   finding," citing *Mid–Century Ins. Co. v. Gardner*, 9 Cal. App. 4th 1205, 1213 (1992)

26   ("The purpose of the doctrine is not to protect every unsatisfied creditor, but rather to

27   afford him protection, where some conduct amounting to bad faith makes it

28   inequitable, under the applicable rule above cited, for the equitable owner of a

15

corporation to hide behind its corporate veil" (internal citation and quotation marks omitted))).

Here, Kissler alleges Mr. He engaged in bad faith by, *inter alia*: Mr. He contacting Kissler to induce Kissler into entering into a contract with SHLA and Park 2580 to purchase Plumbing Parts which Mr. He knew were subject to the Danco patent; Mr. He falsely representing SHLA and Park 2580 could lawfully sell Kissler the Plumbing Parts; and Mr. He instructing Kissler to submit purchase orders from and payments to SHLA and Park 2580, to which Kissler complied.  It would be manifestly inequitable to allow Mr. He to effectively hide behind the corporate veil of SHLA and Park 2580 for the contracts when Mr. He engaged in bad faith by using SHLA and Park 2580 as conduits to unlawfully sell Kissler the Plumbing Parts subject to the Danco patent, leaving Kissler exposed to significant liability.

Accordingly, Kissler has sufficiently alleged facts supporting an alter ego theory of liability for Mr. He under the contracts, and has thus sufficiently stated its contract-based claims against him.

## V.    **CONCLUSION**

For the reasons set forth above, the Court should deny Counterclaim Defendants' Motion.  To the extent that the Court is inclined to grant the Motion in any respect, however, Kissler requests leave to amend to address any findings of deficiency.

Respectfully submitted,

Dated:  May 12, 2025                 K&L GATES LLP

By: _____
Ronie M. Schmelz
Kevin S. Asfour
Lauren E. Elvick

*Attorneys for Defendant*
KISSLER AND CO. INC.

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF KISSLER'S
OPPOSITION TO MOTION TO DISMISS COUNTERCLAIMS

1

## <u>CERTIFICATE OF COMPLIANCE WITH L.R. 11-6.1</u>

2   The undersigned counsel of record for Defendant certifies that this brief contains

3 5370 words, which complies with the word limit of L.R. 11-6.1.

4

5

          **K&L GATES LLP**

6

7 Dated:  May 12, 2025    By:

8            Lauren Elvick

9

10          *Attorney for Defendant*
           *KISSLER AND CO. INC.*

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

CERTIFICATE OF COMPLIANCE WITH L.R. 11-6.1